SOMMERVILLE, J.
The question in this case is whether a certain fire insurance policy had been cancelled, and the policy of defendant had been substituted therefor. The receivers of the Mrs. E. D. Burguieres Planting Company, Limited, have brought this suit to recover on a policy of fire insurance issued by the North River Insurance Company for $5,000. The policy was issued to the Mrs. E. D. Burguieres Planting Company, Limited, May 5, 1913, and contained a clause making the loss thereunder payable to Wilson T. Peterman, sheriff. The policy partly covered the sugar house and machinery of Alice B. plantation, which was the property of the Burguieres Planting Company, which was destroyed by fire April 30, 1913, prior to the date of the policy.
For some time prior to the institution of this suit the Mrs. E. D. Burguieres Planting Company, Limited, had been in the hands of receivers, and its property, the Alice B. plantation, had, besides, been seized by the sheriff under executory process, on March 24, 1913.
While the property was being advertised for sale under executory process, Mr. Peter-man, the sheriff of the parish of St. Mary, kept up insurance on the property to the amount of $97,500. Some difficulty was met with by the sheriff in maintaining this insurance, by reason of the fact that many fire insurance companies were unwilling to insure property while in the hands .of a sheriff under foreclosure. In order to maintain the insurance, Mr. Peterman went to Parkerson & O’Niell, Limited, Who were insurance agents in the town of Franklin, and obtained from them various policies, aggregating from $40,000 to $50,000, and instructed them to keep this insurance in force. Parkerson & O’Niell, as local agents, represented several insurance companies, but the amount of insurance, about $50,000, placed with them by the sheriff, was so large that they were unable to place all of the insurance in their own companies. In order, therefore, *507 to procure and maintain this large amount of insurance, Parkerson & O’Niell wrote to Harry S. Kaufman, Limited, insurance agents and brokers in the city of New Orleans, and obtained from and through them various policies of insurance covering the Alice B. plantation, and Parkerson & O’Niell requested Kaufman to maintain and keep this insurance in force. Harry S. Kaufman, Limited, were local agents of sleveral insurance companies ; but, being unable to carry all of this insurance in their companies, they in turn went to various local agents of other insurance companies in the city of New Orleans and obtained from them policies of insurance covering the Alice B. plantation. After obtaining the policies, Kaufman sent them to Parkerson & O’Niell, who in turn delivered them to the sheriff. Sheriff Peterman did not employ Kaufman. He did not know him, or anything about him. He did not authorize Parkerson & O’Niell to employ Kaufman, or to make him their subagent. He did not know that Kaufman was acting for Parker-son & O’Niell in any manner.
After the policies had been obtained and sent to the sheriff, and during the delay of advertising the property for sale, several of the companies whos;e local agents had issued policies to Kaufman notified their local agents to cancel the policies. Upon receipt of these instructions, the local agents'thereupon sent notices of candellation -to Kaufman, and Kaufman thereupon obtained other policies in lieu of those upon which he had received notices of cancellation. After obtaining these new policies, Kaufman would send the new policies to Parkerson & O’Niell, and would at the same time advise them that he had received notices of cancellation of certain policies, and that the new policies which he had inclosed were intended to take the places of those policies upon which he (Kaufman) had received notices of cancellation. When these new policies were received by Parkerson & O’Niell, they would then take these new policies, together with Kaufman’s letter, to the sheriff. The sheriff would then examine the new policies, and if they met with his approval he would accept them and surrender the old policies, which the companies desired to cancel. That was the method which was pursued up to th|e time of the fire, and it was this method of doing business which gave rise to the present suit.
Among the policies which were obtained by Kaufman was policy No. 4064, of the Mercantile Eire & Marine Underwriters of the American Central Insurance Company for $7,500. This policy was in due course transmitted by Kaufman to Parkerson & O’Niell, and was by them delivered to the sheriff. Some considerable time after the issuance of this policy, Allen Mehle, the local agent of this company in the city of New Orleans, wrote to Kaufman April 17, 1913, informing him that this company, the Mercantile Eire & Marine Underwriters of the American Central Fire Insurance Company, desired to cancel this policy.
Kaufman did not notify Parkerson & O’Niell, or Sheriff Peterman, that the- company desired to cancel this policy. Instead of doing this, he followed his usual custom of trying to get other policies with which to replace the policy of the Mercantile Fire & Marine Underwriters of the American Ceatral Fire Insurance Company, so that he could send new policies to Parkerson & O’Niell at the .same time that he sent the noticte of cancellation.
In his effort to substitute policies for this $7,500 of the Mercantile Underwriters Company, Kaufman went to Black, Rogers & Co.; who were the local agents in New Orleans of the North River Insurance Company and thle Jersey Fire Underwriters of the American Fire Insurance Company, the two companies involved in the present suits, and obtained from these agents binders, or prelimi *509 nary agreements of insurance. One of these binders wsj.s for $2,500, in the Jersey Fire Underwriters of the American Fire Insurance Company, and the other binder was for $5,000 in the North River Insurance Company. The two binders aggregated $7,500, the amount required to be substituted for the $7,500 policy of the Mercantile Underwriters Company. As soon as Black, Rogers & Co. notified these two companies, the Jersey Fire Underwriters and the North River Insurance Company, that these binders had been issued, these two companies immediately notified Black, Rogers & Co. that they would not accept the risks, and that they desired to have the binders cancelled. These notifications were dated April 23 and 28.
Black, Rogers & Co. thereupon notified Kaufman that these two companies desired to cancel their policies, April 26 and 29.
Parkerson & O’Niell, or Peterman, or any one connected with the Burguieres Planting Company, did not know of the issuance of the binders or of the notice of cancellation which had been given Kaufman by the Mercantile Underwriters; nor did these parties know of the attempts which Kaufman was making to obtain other policies as substitutes for the $7,500 policy of the Mercantile Underwriters. All of these communications between Kaufman and the other insurance agents were taking place in New Orleans, and Sheriff Peterman and Parkerson & O’Niell, who were in Franklin, knew nothing whatever about the matter.
When Kaufman received the notices from Black, Rogers & Co. that their two companies desired to cancel their insurance," he realized that he was unable to replace the $7,500 policy of the Mercantile Underwriters of the American Central Fire Insurance Company, and he thereupon wrote to Park-er-son & O’Niell, under date of April 28, 1913, as follows:
“In re Alice B.:
“We received several days ago cancellation notices of the following policies: No. 4903, Milwaukee Mechanics, $2,500; No. 4064, Mercantile Underwriters, $7,500.
“We replaced both lines, but same have been subsequently canceled.
“We herewith inclose policy No. 3604 of the Queen, New York, replacing Milwaukee Mechanics, but we are unable to replace the Mercantile Underwriters for $7,500.
“Kindly return latter policy, and oblige.”
This letter was taken by Parkerson & O’Niell and delivered to Sheriff Peterman, together with the policy of the Queen of New York, which had been sent as a substitute for the policy of the Milwaukee Mechanics.
Sheriff Peterman accepted the policy of the Queen Insurance Company of New York, and surrendered the policy of the Milwaukee Mechanics, which was returned. He declined to return the policy of the Mercantile Underwriters for $7,500.
This letter, dated April 28th, and received by Parkerson & O’Niell on April 29th, was the first notice which the sheriff had of the cancellation of the $7,500 policy of the Mercantile Underwriters. The sale of the Alice B. plantation was to take place on May 3d, within four days after the receipt of this letter, and Sheriff Peterman, knowing that the cancellation notice became effective only after five days, decided to hold the policy and to make no effort to replace it, as the property would be sold, and out of his possession before the cancellation became effective.
On the night of April 30th, the day after the notice of cancellation was received by Sheriff Peterman, the Alice B. sugar house was destroyed by fire.
At the time of the fire Sheriff Peterman had in his hands this $7,500 policy of the Mercantile Underwriters, of which no notice of cancellation had been received by the sheriff except the notice given in Kaufman’s letter received the day before; and he (or Park *511 erson & O’Niell) did not have binders or policies of the defendant companies. They, the sheriff and Parkerson & O’Niell, had not applied to defendants for insurance at any time. They w.ere not aware when the fire occurred that any attempt had been made to take out policies in the North River and the Jersey Fire Underwriters. All that the sheriff knew was that a notice of cancellation of the policy of the Mercantile Underwriters had been given to him the day before the fire, and that, he was holding the policy and taking advantage of the fiwe days during which the policy remained in force before the notice of cancellation became effective.
On the happening of the flue, the policy of the Mercantile Underwriters ceased to be a policy of insurance; it became an obligation to pay.
After the sugar house was burned, the sieiz, ure was released June 22, 1913, and the sheriff transferred the property to the receiviers of the B. D. Burguieres Planting Company, plaintiffs in these two suits. The suits were filed on February 4 and February 14, 1914. In the meantime, on January 28, 1914, plaintiffs elected to stand on the policy of the Mercantile Underwriters for $7,500, and sued that company thereon. An exception of prematurity was filed in that suit by the Mercantile Underwriters, and plaintiffs were ordered to desist from the further prosecution of the suit until the issues between plaintiffs and the defendants in the two suits now before thie court were decided. The record does not show when the suit against the Mercantile Underwriters was decided, and that decision is not before the court for review.
In this suit defendant insurance company denied liability on its policy which is sued upon. The Mercantile Underwriters intervened, and joined plaintiffs.
Plaintiffs answered the intervention of the Mercantile Underwriters, and asked for a judgment against it, if they, the plaintiffs, failed to obtain judgments against defendants.
Intervener says:
“It alleged, in substance, that since there was some question raised in the pleadings touching the ultimate liability of your mover, it joined with the plaintiffs in their allegations that the defendant insurance companies were liable under the policies of insurance sued on. It further declared that it was actuated in filing said intervention in order that it might be afforded an opportunity to tender to the court in support of plaintiff’s demands evidence, both documentary and- parol, which would show that the policies of insurance issued and delivered by the defendant companies were valid and subsisting obligations in favor of plaintiffs.”
Further:
“That it justly anticipated the grateful and ready acceptance of the plaintiffs in this suit of its tender of assistance and support, and had prepared to present on the trial hereof evidence in furtherance of its intervention; but, greatly to_ the surprise and disappointment of your moverj plaintiffs, in their answer to the intervention, have demanded the unusual and illegal remedy of an alternative judgment for the same sum prayed for against the defendants, and thus seek to interject into this litigation a new defendant and new issues.”
The Mercantile Underwriters again declined to meet the issue as to liability on its policy, and moved the court to strike from the answer of plaintiffs to its petition of intervention “that portion of the averments wherein it is pleaded that a judgment can and should be rendered against your intervener in the above numbered and entitled suit, and that portion of the prayer of said answer to the intervention wherein the plaintiffs pray for an alternative judgment against your mover” ; and it was so ordered. There was no appeal taken from that order. The Mercantile Underwriters is not therefore before the court, except as,an intervener, assisting plaintiffs. Its liability to plaintiffs on its policy is not an issue in this case.
There was judgment in favor of plaintiffs, and defendant has appealed.
*513 [1-3] The contract of insurance provides that the policy may be cancelled “by the company by giving five days’ notice of such cancellation.”
That notice must be given to the assured. Clement on Fire Ins. vol. 2, p. 418. But Mr. Clement adds:
“If a broker or agent has general authority from his principal, not only to obtain, but to maintain, insurance, placing and replacing same according to circumstances, in his discretion, having general charge of his principal’s insurance, then he may be the agent of the insured for purposes of cancellation and substitution, and the five days’ notice required may be dispensed or waived by him. The authority of such an agent or broker becomes a question of fact. A broker is an agent of the insured, and an insurance company is justified in regarding him as clothed with full authority to act for the insured in procuring, modifying, or cancelling a policy, and his acts in respect thereto are the same as if done by his principal.” 14 R. O. L. p. 1011.
And Judge Cooley says (volume 3, p. 2798):
“The broad rule must, however, be modified, if the agent is a general one, and not merely a special agency for that particular policy. A notice cancelling a policy given to a broker employed generally to look after all the policy holder’s insurance business, and who has exercised such employment continuously for a considerable period, is sufficient. This is the principle underlying the leading case of Stone v. Franklin Ins. Co., 105 N. Y. 543, 12 N. E. 45, and it has been approved and followed in numerous well-considered cases.”
Intervener quotes from the well-considered case of White v. Insurance Co. (C. C.) 93 Fed. 161, and other cases to the same effect, to sustain its contention that ICaufman was authorized to receive notices of cancellation for the insured, and to substitute other policies in the places of those ordered cancelled. But in none of the cases examined is there found that a subagent, or broker employed by the agent of the insured, was held to represent the assured for the purposes of cancellation and substitution, and we will not hold that a subagent has such authority, particularly where the evidence shows, as it does in this case, that the assured did not know the subagent, or that his agent had employed a subagent. Sheriff Peterman employed Parkerson & O’Niell to place risks for him and to keep the property insured; but he did not authorize them to employ an insurance broker to do the work.
The evidence shows that Kaufman, the sub-agent, obtained a policy for $7,500 from the intervener, the Mercantile Underwriters, dated April 11, 1913, for one year, and that he sent it to Parkerson & O’Niell, who in turn gave it to Sheriff Peterman, who accepted it and held it at the time of the fire, April 30, 1913; that notice of cancellation was served on Kaufman, in writing, April 17, and communicated by Kaufman to Parkerson & O’Niell on April 28, with the written statement:
“We are unable to replace the Mercantile Underwriters for $7,500.”
This notice and information were communicated by Parkerson & O’Niell to Sheriff Peterman on the same day; and he made reply:
“I do not wish the policy replaced; it covers the property for five days more, and the sale will have taken place within that time. I shall not have an insurable interest after the sale; and the purchaser will have to obtain his own insurance.”
There was no sale, for the property burned on the night of April 30, 1913.
The evidence shows, further, that Kaufman had attempted to replace the Mercantile Underwriters policy with Black, Rogers & Co., Limited, insurance agents, who issued two binders, of dates April 21 and 23, in the two companies which are defendants in these two suits. These binders were ordered canceled immediately by the home companies, the defendants, and Black & Rogers must have notified Kaufman to that effect, for the *515 latter wrote Parkerson & O’Niell on April 28 th:
“We replaced both lines, bnt same have been subsequently cancelled. * * * We are unable to replace the Mercantile Underwriters for $7,-500.”
The binders were not forwarded by Kaufman to the insured, and he was not notified of their issuance or existence. They were not substituted for the Mercantile Underwriters policy.
[4, 5] A binder is:
“A document given to the insured, which binds the company to pay insurance, should a fire occur while the policy is being prepared.” 8 C. J. 1110; 14 R. C. L. 883.
These binders of these defendants were never given to the insured or to his agents, Parkerson & O’Niell; they never passed out of the hands of Kaufman, the broker; they were cancelled, and Kaufman knew they were cancelled.
The evidence shows that, nevertheless, Black & Rogers, agents of defendant, issued a policy May 8, 1913, several days after they were notified that defendant declined the risk and after the fire, and gave it to Kaufman.
Rogers, of Black & Rogers, testified that he issued the policies of the two defendants :
“Because it was held that the possession of the binder, or policy, was not material; that if there was any insurance, or evidence of it, or if there was no insurance, it was not material whether the agent, broker, or assured held the policy or the binder.”
The evidence shows that on or about the same day that Kaufman obtained the policy of defendant company from Black & Rogers, that James L. De Treville, of Houston, Texas, special agent of the Mercantile Underwriters, intervener, obtained it from Kaufman, and took it to Franklin, La., where he had a conference with Sheriff Peterman, his attorneys, and Parkerson & O’Niell. He tendered the policies of the defendants in these two cases, aggregating $7,500, and demanded the surrender of the Mercantile Underwriters for the like amount. The insured refused to accept the policies tendered, or to surrender the one demanded by De Treville. De Treville told them that the three policies were out, that they evidenced an overinsurance, and that such overinsurance would avoid the total $100,000 of insurance on the property. After several conferences and much discussion, Sheriff Peterman gave intervener’s policy to De Treville and accepted from him the policies of the two defendants in these cases. At the same time, counsel for the insured wrote a letter to De Treville and Parkerson & O’Niell, in which it is stated:
“He [the sheriff] will accept these two policies and deliver to you the policy No. 4064 written by the American Central Insurance Company of St. Louis, Mo., as aforesaid, as per your request, with the distinct understanding that by thus delivering this policy to you and accepting the other two policies from you he does not recognize policy No. 4064 of the American Central Fire Insurance Company to be cancelled. * * *
“He [the sheriff] now delivers to you said policy No. 4064 of the American Central Insurance Company, with the distinct understanding that if it should develop that these policies, No. 24678 of the Jersey Fire Underwriters, underwritten by the American Fire Insurance Company of Newark, N. J., and No. 1762211 of the North River Insurance Company, have never become effective, and the total amount of insurance is not collected from these two companies, then he notifies you that he expects to hold the American Central Fire Insurance Company of St. Louis, Mo., for the amount of policy No. 4064.”
The sheriff simply relinquished the physical possession of policy No. 4064 of the Mercantile Underwriters with the understanding that his rights were preserved to collect from the insurance company which was legally liable.
This is further borne out by the testimony of Mr. R. C. Milling, one of the attorneys who was present at the conference with De Treville. He testified, in part:
*517 “As Mr. De Treville was going downstairs, I hollered to Mm that ‘You understand by surrendering this policy to you we are not admitting that the policy was cancelled, and that if these other companies are not liable you are;’ and he said, ‘Yes, I understand that; if they are not responsible, we are.’ That’s about the effect of the statement.”
The testimony shows that the sheriff’s act in exchanging the policies was not a ratification of any act of Kaufman’s, but was simply an exchange made by him in a state of doubt and confusion, and in an effort to preserve all his lights, and, in the second place, that he did not release the Mercantile Underwriters Company and accept in lieu thereof the policies of the North River and Jersey Eire Underwriters. 14 R. C. D. p. 1013.
The insured certainly did not by such language accept the policy of defendant as a substitute for that of the Mercantile Underwriters. De Treville had no authority to represent defendant, nor did Sheriff Peter-man thereby ratify any act of Kaufman’s in obtaining the policy of defendant.
The policy of defendant was void ab initio. The assured did not apply for it; he did not want it; he did not need it. The property was covered by intervener’s policy, and would remain covered until after the sale. Defendant refused the application of Kaufman for insurance, and he (Kaufman) notified Parkerson & O’Niell that he could not effect new insurance. There was no object or thing to be insured at the date of the policy. It had been destroyed by fire. There was not an element of a contract present when the policy was issued by Black & Rogers, agents. There was no contract; there was no policy of insurance issued by defendant; and the written evidence of such a contract could not be used, and it was not attempted to be used, as a substitute for the policy which was in existence, either by defendant, or the insured, or their agents. There was nothing to be ratified, and the insurer did not ratify anything, in that void policy.
Plaintiffs plead estoppel against defendant on the further ground that it had received the premium on the policy sued upon. This premium was tendered back after the suit, and the tender was refused.
It appears that Parkerson & O’Niell billed Sheriff Peterman for the premium of $150 on the policy of the Mercantile Underwriters at the end of the month of April, 1913, together with other premiums, and that it was paid; that Parkerson & O’Niell remitted the premiums to Kaufman; that Kaufman, on his books, divided it between the two defendants, and remitted it to Black & Rogers; that Black & Rogers, in their monthly statements of the month’s business, divided it between these two defendant companies; that Black & Rogers remitted the month’s collection to defendants; that their statement and check went to the bookkeeping department of defendant’s office, while the report of the refusal to insure or cancellation went to the underwriting department, and that these departments were not in any way informed of the transactions of each other; that the manager, superintendent of agencies, and head of the underwriter’s department of the defendant’s company did not learn that the premium had been paid until after this suit was filed, when it was tendered back. Under such circumstances, defendant is not estopped to deny its liability on a policy which was void ab initio. The reception and detention of the premium did not mislead the insured and place him in a false position; it did not cause him to surrender the Mercantile Underwriter’s policy. It did no harm to any one.
There is no question of over or excess insurance in this case.
It is therefore ordered, adjudged, and de *519 creed that the judgment appealed from he annulled, avoided, and reversed, and that there be judgment in favor of defendant, dismissing plaintiffs’ suit, with costs.
O’NIELL, J., being recused, takes no part.