15930

COLLINS v. MERRIMACK MUT. FIRE INS. CO. *ET AL.*
42 S. E. (2d) 67)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, for Appellant, cite :

*Mr. Stephen Nettles,* of Greenville, for Respondent Insurance Companies, cites:

*Messrs. Daniel & Russell,* of Spartanburg, for Respondent, Brodie Insuance Agency.

March 28, 1947.

OXNER, AJ.: This is an action against two foreign insurance companies and a local insurance agency to recover actual and punitive damages for an alleged conspiracy to conceal the name of the insurer or insurers of a stock of goods and fixtures owned by appellant and to withhold from him "certain other information without which plaintiff (appellant) cannot know the true nature of his legal rights and his appropriate legal remedies". The plea of each of the respondents was a general denial. The appeal is from an order of nonsuit granted at the close of appellant's testimony.

Appellant owns a building on East Main Street in the City of Spartanburg where for some time he has operated a large department store. A fire occurred on February 8, 1942. The loss and damage to the merchandise and fixtures in the store was adjusted with the various interested fire insurance companies on March 12, 1942, at the sum of $23,187.17.

During the early morning of February 13, 1942, prior to the adjustment of the loss from the first fire, another fire occurred at this store. This litigation grows out of the second fire.

Appellant testified on direct examination that after the first fire he tried though several agents to procure insurance but was unsuccessful; that finally about 11:00 P. M. on February 12, 1942, he telephoned John C. Brodie, of Brodie Insurance Agency, at his home in Spartanburg, and told Brodie he wanted insurance in the sum of $10,000.00 on his stock of goods and fixtures and in the sum of $7,000.00 on the store building; that he knew the Brodie Insurance Agency represented several mutual companies and stated to Brodie he preferred the company paying the largest dividends, to which Brodie replied that he would take the insurance and that appellant "was covered from that moment"; that no particular insurance company was mentioned in this conversation; and that subsequent to the fire Brodie told him that "he (Brodie) intended placing it through the Ratteree agency". Appellant testified on cross-examination, immediately after saying that Brodie told him that he was covered, as follows:

"Q. But he did not tell you who with?

"A. No, *I was covered by him as agent* and it was only later.—

"Q. He told you the fire occurred before he placed it with a company?

"A. No, all I recall was that he said the place *would be* covered by the Ratteree Company, which he represented." (Italics added.)

Later during this cross-examination appellant testified that some time subsequent to the fire Brodie said that "the people he represented he *intended* placing it with would not issue the policy". (Italics ours.)

The foregoing is substantially all the testimony relating to any contract of insurance. The second fire occurred some time during the night on which appellant claims that he procured insurance through Brodie. No policy was ever issued.

Appellant further testified that on the day after the fire, in response to a telephone call from Brodie, he came to the

store and was introduced by Brodie to a Mr. Cutter, an insurance adjuster; that Brodie and Cutter inquired as to "what sort of adjustment" he would make; that later during the discussion Cutter stated that he could make no adjustment until after the loss from the first fire was settled; and that thereafter he employed a Mr. Hopkins, an independent insurance adjuster of Atlanta, to represent him.

Hopkins testified that he came to Spartanburg in April, 1942; that he first went to see Brodie who said that "the matter was out of his hands" and referred him to Cutter who lived in Greenville; that he then came to Greenville and saw Cutter who stated that "he was representing John Ratteree" and would have to see Ratteree and Mr. Nettles, an attorney of Greenville, before he could discuss the matter further; and that the next day he went to Greer to meet Ratteree and Cutter but only saw Cutter, who said "he" (Cutter) had just finished talking to Mr. Ratteree, the general agent, and was representing him and that Mr. Ratteree considered Mr. Collins' claim as only a nuisance value not exceeding $100.00".

On April 20, 1942, appellant's counsel wrote Brodie Insurance Agency stating that they would like to discuss an adjustment and settlement of the loss from the second fire. Brodie Insurance Agency replied the next day, asking these attorneys to contact Cutter, an adjuster of Greenville. On April 28th, Cutter wrote appellant's counsel stating that Bodie had referred the correspondence to his office and that Mr. Nettles, an attorney of Greenville, would communicate with them. On April 29th, appellant's counsel wrote Cutter as follows: "We shall appreciate it if you will advise us the name of the insurance company or companies which you are representing in this matter". On May 2nd, Mr. Nettles made the following reply to this letter: "The names and addresses of the companies represented by Mr. Brodie are: Merrimac Mutual Fire Insurance Co., Andover, Mass., Middlesex Mutual Fire Insurance Co., Concord, Mass". On the same day appellant's counsel acknowledged the receipt of Mr.

Nettles' letter and called his attention to their letter of the 29th in which they requested Mr. Cutter to give them the name of the insurance company or companies represented by him. On May 6th, Mr. Nettes made the following reply: "Mr. Cutter tells us that he was employed by Federated Hardware Mutual Fire Insurance Co. of Minnesota to adjust the building loss".

While it appears that respondent Brodie Insurance Agency is authorized to write insurance for the two respondent companies, the record is not clear as to the number of other companies this agency represents. There is nothing to show that appellant had previously procured any fire insurance through this agency. The insurance involved in the first fire was witten by a different agency and neither of the respondent insurance companies was involved. It appears that Ratteree of Greer is a general agent but the record fails to disclose what companies he represents. Presumably the two respondent companies are among those represented by him. It is shown from the record that Cutter is an independent adjuster whose services are sought from time to time by various insurers. He participated in adjusting the building loss fom the first fire but the record is silent as to what company, if any, he was representing in connection with the second fire. We agree with the following conclusion reached by the trial Judge: "As far as Cutter is concerned, there is just a whole lot of surmise and conjecture as to who he was acting for".

This action is not one against the Brodie Insurance Agency for failure to insure appellant in accordance with the alleged verbal agreement. Nor is it an action against the two respondent insurance companies on a verbal contract of insurance. It is alleged in the complaint on information and belief "that before said fire said Brodie bound the business aforesaid in one or both of the two defendant fire insurance companies, but plaintiff does not know whether one or both of said companies were so bound". It is further alleged "that the truth of the matter is within the peculiar

knowledge of defendants and is being wrongfully concealed from plaintiff". Appellant concedes, as indeed he must under the case of *Fulmer v. London, Liverpool & Globe Fire Insurance Company et al.,* 172 S. C. 525, 174 S. E. 466, that the proof is insufficient to establish a parol contract of insurance because no specific insurer was designated. He alleges that his inability to prove such a contract was brought about by a conspiracy between respondents to withhold from him "the name or names of the insurance companies who became bound either originally or by ratification".

We think the evidence is wholly insufficient to sustain the alleged conspiracy. There could be no conspiracy to conceal the fact of insurance unless there was first a contract of insurance. Each of the respondent companies denied that it entered into such a contract with appellant. It may be added that their denial is to some extent supported by appellant's own testimony as to statements made to him by Brodie. While he says that Brodie told him that he "was covered from that moment", appellant later stated that he "was covered by him (Brodie) as agent" and that Brodie said he "intended placing it (the insurance) through the Ratteree agency". A fair inference from this testimony is that the fire occurred before the insurance was placed with any company. But if we assume that the testimony warrants the inference that Brodie bound one of the respondent companies on the night of the fire, which company was it? If both, what portion of the risk was each to carry? We know of no legal obligation resting upon a party to voluntarily furnish information so as to enable his adversary to prove a claimed liability against him. The courts have gone no further than to hold that, when the circumstances in proof tend to fix a liability on a party who has it in his power to offer evidence peculiarly within his knowledge of all the facts as they existed and rebut the inferences which the circumstances in proof tend to establish, and he fails, without satisfactory explanation, to offer such proof, the presumption is that the proof, if produced, would sup-

port the inferences against him. But the presumption or inference arising from the failure of a party to produce available evidence will not supply a missing link in an adversary's case and cannot be treated as independent evidence of a fact otherwise unproved. 20 Am. Jur., section 193, page 195; Annotation 70 A. L. R., page 1326. As stated in *United States v. Mammoth Oil Co. et al.* (C. C. A. 8th Circuit), 14 Fed. (2d) 705: "Of course, a plaintiff in a case cannot insist that defendant must furnish evidence he may have or permit plaintiff to succeed, and there must be affirmative proof of facts *prima facie* at least to sustain plaintiff's contentions before inferences can be properly drawn. The language used by some courts is that there must be something laid at defendant's door".

It is suggested that the only reasonable explanation of Cutter's actions is that there existed a contract of insurance with some company. But here again the proof fails to identify the insurer or insurers, if any, for whom Cutter was acting. Moreover, it is obvious that Cutter was not empowered to make a contract of insurance after the loss had occurred. Appellant did not offer Cutter, Brodie or Ratteree as witnesses. If appellant thought that he had a contract of insurance with either of the respondent companies, he could have sued on such contract and under the applicable code provisions examined their officers or agents before trial, but he made no effort to do so.

When this case was called for oral argument, respondents moved, after due notice to appellant, to dismiss the appeal on the ground that the exceptions did not comply with Rule 4, Section 6, of this Court. We concede that the exceptions are rather general and this also applies to the statement of questions involved found in appellant's brief. As a result, we have had some difficulty in determining the exact issues intended to be raised. The motion to dismiss presents a close question which we have decided not to pass upon. Our conclusion on the merits is such that respondents

are not prejudiced by our failure to pass upon the motion to dismiss.

Judgment affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.