16470

DUBUQUE FIRE & MARINE INS. CO. OF DUBUQUE v. MILLER *ET AL.*

(64 S. E. (2d) 8)

*Messrs. N. A. Turner and Edward A. Harter, Jr.,* of Columbia, and *Clausen, Hirsh & Miller,* of Chicago, Ill., *for Appellant,*

*Messrs. Baskin & Cothran,* of Bishopville, *for Respondents,*

March 6, 1951.

L. D. Lide, Acting Associate Justice.

This action was commenced in the Court of Common Pleas for Richland County on or about May 25, 1948, to cancel a

policy of fire insurance issued in the name of the plaintiff to the defendants in the sum of $2,500.00, bearing the number 1399164-J, and dated January 24, 1947. The defendants filed their answer denying the allegations upon which cancellation of the policy was sought; and set up by way of counterclaim their right to recover upon the policy. The action was consolidated for trial with another action entitled "*Pennsylvania Fire Insurance Company v. Kitty Hawk, Inc.*"; and the same were tried without a jury before Hon. G. Badger Baker, Circuit Judge, then presiding in Richland County, during the March, 1949, term, but by consent were argued later, and the order of the trial Judge herein was duly filed on August 8, 1949, wherein he held that the plaintiff was not entitled to the cancellation of the insurance policy, but that on the contrary, the defendants were entitled to judgment for the amount thereof to wit, $2,500.00, wih interest and costs, as pleaded in the counterclaim. The case comes before us upon appeal by the plaintiff from this order.

The parties will generally be referred to herein in accordance with their status in the Court below, that is to say, as plaintiff and defendants respectively. But the plaintiff will frequently be called the Dubuque Company.

The real defendant is a corporation, to wit, Kitty Hawk, Inc., but pursuant to the language of the policy in question John B. Miller and Mrs. Nancy K. Saunders, as the owners and operators of the corporate business, are also joined as defendants, Mr. Miller acted for all the defendants in the matters involved.

The Carl A. Wilson Insurance Agency of Columbia, S. C., hereinafter called the Wilson Agency, constituted the local agent (or agents) of the Dubuque Company, and also of nine other fire insurance companies, at the times in question herein, and was authorized to issue policies of insurance of the Dubuque Company. The Wilson Agency was generally represented by L. Jack Wilson.

There is relatively little dispute as to the facts of the case, which will now be recited by us as briefly as practicable; directing attention of course to any controversial matters.

The defendants, represented by Mr. Miller, were regular insurance clients of the Wilson Agency, and they were preparing to open a modern restaurant at the Lexington Airport near the City of Columbia. Consequently on the atfernoon of January 24, 1947, Mr. Wilson had a conversation over the telephone with Mr. Miller, resulting in an agreement whereby the Wilson Agency was to insure the contents of the restaurant in the sum of $25,000.00; and the insurance was to be effective immediately. But although the Wilson Agency represented the Dubuque Company and nine other insurance companies, nothing was said at that time as to what company or companies would issue the policy or policies. In other words, that essential feature of the aggreement was not mentioned at all. Nor was anything said as to the premium or the duration of the risk, but by reason of the former dealings between Messrs. Wilson and Miller this particular phase of the matter might perhaps have been implied.

The 24th day of January, 1947, was on Friday of that week, and on Sunday, to wit, January 26, 1947, the day of the opening of the restaurant, tragically enough, the contents thereof were totally destroyed by fire. There was no question as to the origin of the disastrous fire or as to the value of the property consumed. Immediately after the fire Mr. Wilson visited the scene, where, according to defendants' evidence, he assured Mr. Miller that the property of Kitty Hawk, Inc., was covered by the insurance previously agreed upon, and then for the first time told him that the insurance coverage was in all the companies represented by the Wilson Agency, but did not state the proportionate coverage in any company or name any of the companies. And it appears that this latter information was not acquired by the defendants until the subsequent delivery of the policies on February 15, 1947.

On Monday, January 27, 1947, the Wilson Agency wrote a letter to the Wm. R. Timmons Agency at Greenville, S. C., this agency constituting the *general agents* of the Dubuque Company, to whom reports and remittances were made by the Wilson Agency. This letter refers in some detail to the oral transaction between Wilson and Miller on January 24, 1947, with reference to the insurance, and the subsequent fire on January 26, 1947; and incidentally, it was stated that all of the equipment and other contents of the restaurant destroyed by the fire "had just been purchased and had never been used." We also quote the following paragraph from this letter: "We are not familiar with the procedure in such a case, but definitely, this Agency did accept the liability for $25,000.00, effective the date mentioned above and since no Company or Companies were considered for the liability we are writing each of the ten companies receiving business from this office to accept one-tenth each of the liability involved. This, in our opinion would be the fair and equitable thing to do."

The testimony of T. J. Mims, Manager of the Timmons Agency, was to the effect that this letter was forwarded by them to the Home Office of the Dubuque Company, and that they refused to accept liability.

On February 15, 1947, the Wilson Agency, having allotted to each of the companies represented by it, the sum of $2,500.00 of the insurance, prepared and executed nine insurance policies (including the policy involved in the instant case) and one formal binder; all bearing date January 24, 1947, and extending for the term of one year. The formal binder was intended to cover the Canal Insurance Company's part of the insurance; the Wilson Agency not being authorized to countersign a policy in its behalf. These policies, including the binder, were all delivered to Mr. Miller for the defendants on February 15, 1947; and the total amount of the premiums, to wit, $555.95, was immediately paid by him by the delivery of a check, the original of which was introduced in evidence, showing that it was duly paid by the

drawee bank; and a receipt was given to the defendants, listing the policies and their numbers and the names of the companies; each of the companies, including the Dubuque Company, being entitled to a premium of $56.73, except that as to one of the other companies the premium was listed as $45.38.

On February 17, 1947, (just two days after the delivery of the policies) Mr. Mims, Manager of the Timmons Agency, wrote a letter to the Wilson Agency, which was introduced in evidence, and from which we quote the following:

"We have not heard from Dubuque in regard to your request that they absorb $2,500.00 of this loss but do not hold any hope that they will as the amount of business you have given them is practically negligible.

"Under no circumstances deliver the Dubuque policy issued by you until we hear from Dubuque and advise you as we have no idea of their reaction."

There was another letter from the Timmons Agency to the Wilson Agency, which was dated May 22, 1947, in which it was stated in effect that the Dubuque Company had never recognized liability under the policy in question.

In the meantime, to wit, on or about April 22, 1947, the Wilson Agency forwarded to the Timmons Agency its "fire abstract sheet" for the month of February, 1947, together with its check, dated on that day, in the sum of $120.61, payable to the order of Wm. R. Timmons Agency; and this check includes, in the computation of the balance due, the $56.73 premium received from the defendants for the Dubuque Company policy in question. The check for $120.61 was the balance shown on the "fire abstract sheet", stating, in accordance with its purpose, the account of the Wilson Agency with the Timmons Agency. A photostatic copy of this sheet was introduced in evidence, and listed thereon are four policies issued by the Dubuque Company, three of these policies having been issued to other persons and having no connection with the case at bar. There was also a policy is-

sued to some other party by the Canal Insurance Company, a company also represented by the Wilson Agency. Among the Dubuque Company policies there is specifically set forth the policy involved in this action; and it is shown that the names of the assured were "John B. Miller & Nancy K. Saunders"; the property being, "Furniture & Fixtures"; the policy No. 1399164; the date of expiration, 1-24-48; the amount, $2,500.00; and the premium, $56,73. Moreover, the sheet plainly shows that the balance due is $120.61 (the amount of the check). Indeed, the meaning of the entries on the sheet is so clear that they could not be misunderstood.

It should be observed here, however, that the matters just stated with reference to the abstract sheet and the remittance to the general agents of the Dubuque Company of the premium, are controverted to some extent by the plaintiff, and further reference will be made to the same in the consideration of the appellant's exceptions. But the evidence is uncontradicted that if the premium was in fact received by the Timmons Agency, the general agents of the Dubuque Company, it was never returned or offered to be returned to the defendants or to the Wilson Agency, either before or after the institution of this action. The evidence is further undisputed that the Dubuque Company never gave to the defendants any notice of denial of liability on the policy in question, save by the commencement of this action.

. Counsel for the appellant herein, the Dubuque Company, filed nine exceptions to the order of Circuit Judge Baker; and in their brief they state the questions involved as being four in number; and counsel for the respondents also adopt their statement of the questions involved, which are as follows: "1. Can there be a ratification of, or a waiver of the right to cancel, a policy that is void *ab initio?* 2. Assuming that there can be; has there been such a ratification or waiver in this case? 3. Did respondents participate in the acts of the Wilson Agency in issuing, delivering, and collecting for the policy after the fire? 4. Did the failure of appellant to for-

mally notify respondents of its denial of liability have any bearing on the question of appellant's liability?"

Counsel for the appellant in their interesting brief state that the fundamental problem as raised by their exceptions is as follows: "Has there been such an acceptance and retention of the premium in this case as to make the insurance company liable on a policy issued and delivered after a loss as an independent act of the local agency?"

The problem as thus stated covers the first two of the questions involved as above shown, and will now be considered by us.

As we have already stated, there is some controversy with regard to the facts relating to the acceptance and retention of the premium. This, however, arises solely from the testimony of Mr. Mims, the Manager of the Timmons Agency, but it is not *positive,* for he merely says that to his knowledge they never did receive the premium; although when confronted with the original check he was compelled to admit that the same appears to have been paid by the bank. He also declined to admit that they ever received the fire abstract sheet or a copy thereof. And he suggested the theory that if the money was received by them, it was applied to something else; but even if this were true, it would constitute no justification. We are therefore of opinion that the conclusion reached by Judge Baker, as set forth in the following quotation from his order, is supported by the overwhelming weight of the evidence: "Although Mr. Mims denies reception of the Kitty Hawk premium, or declares there is no record of its reception in his office, it is patent that the Timmons Agency received the plaintiff's portion of the premium. This premium has been retained, was not sent back to the Wilson Agency, nor has it ever been tendered to the defendant."

Referring now to the applicable law, we are in full accord with the ruling of the trial Judge in regard to the alleged oral "binder" arising from the telephone agreement between the Wilson Agency and the defendants on

January 24, 1947, to the effect that the failure to designate any company or companies is fatal to its validity, as applied to the Dubuque Company, or incidentally any other company. The authorities on this point, we think, are conclusive. See *Fulmer v. London, Liverpool & Globe Fire Ins. Co.*, 172 S. C. 525, 174 S. E. 466; *Gaskins v. Firemen's Ins. Co.*, 206 S. C. 213, 33 S. E. (2d) 498; and *Collins v. Merrimack Mut. Fire Ins. Co.*, 210 S. C. 207, 42 S. E. (2d) 67.

Judge Baker also held that the subsequent delivery by the Wilson Agency to the defendants of the policy in question here, bearing date January 24, 1947, which was prior to the date of the fire, was an independent act on the part of the local agency; and that clearly the Wilson Agency had no authority to execute and deliver the same; although we may add that the policy was delivered prior to the letter of the Timmons Agency, dated February 17, 1947, actually forbidding the delivery of the Dubuque policy; but there was a previous letter stating that unprotected restaurants were on the prohibited list for this company. However, Judge Baker upon due consideration of the testimony as to the acceptance and retention of the premium by the insurer held that the plaintiff "waived its right for a cancellation of the policy, even though in its inception the contract was void."

It is true that some contracts absolutely void *ab initio* may not be subject to waiver or ratification, where such a contract is forbidden by law; or perhaps where it violates some established rule of public policy. 26 C. J. 66; 44 C. J. S., Insurance, § 273. But we do not think that principle is apposite here, because the insurance policy in question was void *ab initio solely* because the Agency issuing and delivering it had no authority to do so. It is elementary that lack of authority *can be supplied by express ratification.* And in the case at bar it was testified, without objection, that seven of the companies involved had paid in full. This is mentioned merely for the purpose of illustrating express ratification and not to indicate that the payment by other companies imputes any liability to the plaintiff. And it may

be observed that the Pennsylvania Fire Insurance Company case tried with the case at bar was decided in its favor by Judge Baker.

If an unauthorized contract or policy of insurance ■ may be ratified *expressly,* it follows that there may be an *implied* ratification by the acceptance and retention of the premium.

The words "waiver", "estoppel", and "implied ratifi- ■ cation" appear rather frequently in insurance cases and are sometimes used interchangeably, although distinguishable in some respects. The principle expressed by the use of these terms is recognized in the law as tending to the furtherance of justice. The rule is succinctly and correctly stated in the following quotation from 45 C. J. S., Insurance, § 672, p. 610: "An insurance company may waive, or be estopped to assert, a ground for avoidance or forfeiture of an insurance policy, and the courts are prompt to seize on any circumstances which indicate a waiver on the part of the company or which will raise an estoppel against it."

Indeed, the quoted statement extends further than appears to be necessary in the case at bar, for we think the acceptance and retention of the premium manifestly indicate waiver without the necessity of seizing upon merely incidental circumstances.

Our Supreme Court held in the case of *Spence v. Phoenix Assurance Co.,* 104 S. C. 403, 89 S. E. 319, that "the defendant's failure after the fire to return the premium of insurance, or the unearned portion thereof, in accordance with the provisions of the policy, was evidence of waiver". And in the case of *Doyle v. Hill,* 75 S. C. 261, 55 S. E. 446, 447, it was held (quoting from the opinion, which was delivered by Mr. Justice Jones): "An insurance company, affected with knowledge of its agent and thus knowing the existence of a cause of forfeiture *at the inception of the contract,* is estopped to assert such forfeiture by *accepting the premium,* and delivering the policy as a valid contract of insurance. *Gandy v.*

[*Orient*] *Insurance Co.,* 52 S. C. 224, 29 S. E. 655." (Emphasis added.)

See also *Whaley v. Guardian Fire Ins. Co.,* 124 S. C. 173, 117 S. E. 209; *Cockfield v. Firemen's Ins. Co.,* 146 S. C. 351, 144 S. E. 71; and 45 C. J. S., Insurance, § 716, p. 696.

Counsel for the appellant argue, however, that perhaps the Courts have given undue weight to the failure to return a premium, especially since the insured is sometimes allowed to recover even where he had not paid the premium; but policies are certainly sometimes issued without requiring immediate payment of premiums. The doctrine that the acceptance and retention of the premium may constitute waiver or estoppel or implied ratification is soundly based upon the fact that the premium is the *consideration* which the insurance company receives in exchange for its assumption of the risk. When therefore this consideration is accepted and retained by the company, no forfeiture should be allowed; having in mind the rights and interests of the respective parties.

Counsel for the appellant also rely in their brief to some extent upon the Louisiana case of *Brown v. North River Ins. Co.,* 144 La. 504, 80 So. 674, 679, wherein judgment was rendered in favor of the Insurance Company. In this case it appeared that a statement with a check for a premium went to one of the departments of the Insurance Company, while the report of the refusal to insure or concellation went to another department, and that consequently the manager "did not learn that the premium had been paid until after this suit was filed, when it was tendered back." Especially in view of the quoted words from the opinion, this case does not seem to be in point.

Our conclusion therefore is that the question (or questions) now under consideration should be answered adversely to the appellant.

The fourth question, relating to the failure of the plaintiff to give formal notice to the defendants of its denial of liability, prior to the institution of this action, may be conveniently mentioned at this point. It is contended in behalf of the appellant that this matter is irrelevant and without probative value. But we think that Circuit Judge Baker properly disposed of the objection, when he held that this was a circumstance to be considered, along with the other evidence in the case, on the subject of waiver.

There remains, however, for consideration the third question posed by the appellant, to wit, "Did respondents participate in the acts of the Wilson Agency in issuing, delivering, and collecting for the policy after the fire?"

We are in full agreement with the sound principle laid down in the case of *Ayers v. Business Men's Ins. Co.*, 148 S. C. 355, 146 S. E. 147, to the effect that an insurance company will not be bound by knowledge of its agent acting in fraud of his principal and aided by intentional fraud of the party applying for insurance. This was a life insurance case, but the principle applies equally to a fire insurance case. See also the case of *Eskew v. Life Ins. Co. of Virginia*, 190 S. C. 515, 3 S. E. (2d) 251.

But we are unable to find in the record any evidence whatsoever to warrant the application of this principle to the case before us. We are in full agreement with Judge Baker when he says: "The evidence is not susceptible of the inference that the payment by Miller and the acceptance by the local agency was simply another step in the collusion between the two to saddle the risk upon plaintiff, nor is there any evidence that Mr. Miller was in collusion with any fraud that may have been perpetrated upon plaintiff. On the contrary, the evidence shows that Mr. Miller is wholly unlearned in the field of insurance, as are most members of the general public, and relied altogether upon the local agency, which most members of the general public do."

Counsel for the appellant in the discussion of this question also allude to a non-waiver agreement which appears to have been signed by certain insurance adjusters and by Mr. Miller, which was read into the record; and the inference is sought to be drawn that Mr. Miller knew, or should have known, that the matter was thus taken out of the hands of the Wilson Agency. But this assumes, as Judge Baker indicates in the quoted excerpt, a knowledge of the insurance business which could not reasonably be imputed to Mr. Miller. Incidentally, it may also be mentioned that we do not think the non-waiver agreement is effective for any purpose in this case, because there is no evidence that the Dubuque Company was a party thereto; besides, as stated by Judge Baker, even a non-waiver agreement may in a proper case be waived.

We observe a reference in appellant's brief to the fact that after the payment of the premiums by the defendants for all the insurance on February 15, 1947, amounting in the aggregate to $555.95, the rate was corrected by the Rating Bureau. And the testimony of Mr. Miller shows that this resulted in an increase of approximately $32.00 (applying we assume to all the policies pro rata), and that the same was paid by him to the Wilson Agency. There is no evidence showing the remittance by the Wilson Agency to the Timmons Agency of the Dubuque Company's share of this very slight increase. But certainly this negligible circumstance can have no effect upon the merits of the appeal before us.

Our conclusion is that all of the questions posed should be answered adversely to the contentions of the appellant, and that all of its exceptions should be overruled; and that the findings of fact by the Circuit Judge are in manifest accord with the clear preponderance of the evidence, and that his conclusions of law are correct, and hence that his well considered order should be, and it is hereby,

Affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.