14513

BAKER v. METROPOLITAN LIFE INS. CO.

(192 S. E., 571)

342

July, 1936.

*Messrs. Leppard & Leppard,* for appellant, cite:

*Messrs. Willcox, Hardee & Wallace,* for respondent, cite:

July 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action under a group policy of insurance issued by respondent to the employees of Jones & Laughlin Steel Corporation, of Pittsburgh, Pa. Appellant was an employee of said corporation. The original policy, of date August 30, 1928, as issued, gave unto employees of this concern, or, that is, to employees in the class of appellant, insurance divided as follows: Life insurance, including in connection therewith total and permanent disability benefits, $1,000.00; health or temporary disability benefits, $12.00 per week; and a supplementary agreement for accidental death and dismemberment, $1,000.00. Under the dismemberment clause, it was provided that if an insured employee should lose the total and irrecoverable loss of sight of one eye, as a result of, and caused directly and independently of all other causes by, external, violent, and accidental means, and provided such loss occurs within 90 days from the date of such accident, he would receive one-half of the amount of accidental death and dismemberment insurance.

On September 1, 1929, and for an additional premium, respondent issued a "rider" increasing the amount of insurance on the life of appellant, and his total and permanent disability benefits, $2,000.00, that is, for a total of $3,000.00. There is no dispute between appellant and respondent up to this point, but thereafter there is utter disagreement.

The complaint of appellant, after setting forth formal matters, and the provisions of the group policy as originally issued, alleged as follows:

"4. That subsequently and on or about the 1st day of September, 1929, the defendant, in consideration of an increase of the premium to be paid for said insurance, increased the amount of plaintiff's said policy in the sum of $2,000.00, making the total amount of the said insurance $3,000.00, and the premium to be paid by the plaintiff therefor the sum of $2.70 per month, in consideration of which the sum of money to be paid unto the plaintiff in the event he should sustain the irrecoverable loss of sight of one eye, was increased to the sum of $1,500.00.

"5. That thereafter and on or about the 25th of May, 1931, and while the said insurance was in full force and effect, and while the plaintiff was in the employment of the said Jones and Laughlin Steel Corporation, he sustained a bodily injury, which was caused directly and independently of all other causes by external, violent and accidental means, to wit: A piece of molten iron, steel or some other foreign substances or bodies was spilled from an ore kettle and was blown or dropped into plaintiff's left eye, as a result of which said external, violent and accidental bodily injury, plaintiff suffered, within 90 days from the date of such accident, the irrecoverable loss of the sight of his left eye."

It is further alleged that appellant has duly performed all the conditions of the policy of insurance on his part to be performed; that he had demanded of respondent the sum of $1,500.00, which demand had been refused, and liability in any amount denied.

The respondent answered, denying that appellant had lost the irrecoverable sight of his eye by violent, external, and accidental means, and at the time and in the manner set forth in the complaint; admitted and alleged that under a policy of insurance issued Jones & Laughlin Steel Corporation, of date August 30, 1928, it, among other things, agreed, upon receipt of due notice and proof that any employee insured thereunder had suffered the irrecoverable loss of the

sight of one eye caused directly and independently of all causes by violent, external, and accidental means, and provided the loss occurred within 90 days from the date of the accident, to pay such employee the sum of $500.00.

It further pleaded and alleged that as a condition precedent to payment of the $500.00, the following provisions of the policy:

"Written notice of injury to any Employee insured hereunder must be given to the Company within 20 days after the date of the accident causing injury.

"Affirmative proof of loss and that the same is covered under the Provisions of this Supplementary Agreement and of the said Group Policy must be furnished to the Company within 90 days after the date of the loss for which claim is made. The Company shall have the right and opportunity to examine the person of any such Employee when and so often as it may reasonably require during the pendency of claim thereunder, * * *"
that no written notice of injury was given to respondent, and no affirmative proof of loss was ever filed with respondent, and it had not been given the right and opportunity to examine the person of appellant.

It further answered as follows: "That on December 18, 1931, a statement of claim was filed by the plaintiff in this action with the defendant in which he claimed that in September, 1929, he lost the sight of his left eye, and subsequently, the sight of his right eye became impaired, but not arising out of or in the course of his employment by Jones & Laughlin Steel Corporation; that in said claim it was represented to the defendant by plaintiff that the loss of the sight of his eye was not the result of bodily injury sustained by violent, external and accidental means; that, as provided by the contract of insurance with Jones & Laughlin Steel Corporation, hereinabove referred to, a claim for the loss of the sight of plaintiff's eye was allowed, and the plaintiff was paid in accordance with the provisions of the

policy, the full amount of the liability of the defendant thereon, to wit: 13 weeks at $12.00 per week, a total of $156.00, that said amount was accepted by plaintiff; that said allowance was made on plaintiff's representation that no accident occurred occasioning the injury to plaintiff's eyes, and if it should be established that the loss of the sight of plaintiff's eye was the result of bodily injury sustained by violent, external and accidental means while in the employ of Jones & Laughlin Steel Corporation, the amounts heretofore paid plaintiff should be offset on any recovery had herein."

It further answered, by pleading the laws of the State of Pennsylvania, but since a careful reading of the record discloses that the trial Judge did not base his ruling on the laws of Pennsylvania, it is unnecessary to set out this defense.

Upon appellant "resting" his case, respondent made a motion to strike out certain testimony, and for a nonsuit, as follows:

"The defendant moves to strike from the testimony all the testimony which has been offered in regard to any proof of claim, or as to any notice of claim, other than the claim filed and offered in evidence as an exhibit in this case, upon the ground that that claim shows that Mack Baker claims to have lost the sight of his left eye commencing with a condition, not attributable to accident, which developed in September, 1929, which is the same eye he seeks to recover for the loss of in this action.

"That claim, according to the testimony, was paid, and it is the only statement of claim that has been introduced. The testimony also shows that this claim was filed after the alleged accident.

"Now, there was no foundation laid in the complaint of fraud in the procurement of this claim, and there is no testimony of any other claim having been filed for this alleged accident. * * *

"There has never been any claim filed with the Metropolitan Life Insurance Company for the alleged injury set forth and described in the complaint; and this party, the plaintiff here, has collected benefits under this policy for the very condition that he claims now exists, to which he would not have been entitled if it were an accidental injury; and those benefits so received have not been returned or tendered to the company, but are still held and retained by him."

The motion of respondent for a nonsuit was granted, and appellant has appealed on thirteen exceptions, Nos. 3, 4, 5, 6, 7, 8, and 10 relating to alleged error in granting nonsuit; Nos. 1 and 2, alleging error in rulings as to the deposition of a witness, Lester F. Burke; No. 9, alleging error with reference to the introduction in evidence of claim of appellant for temporary disability benefits; No. 12, alleging error with reference to proof of filing of notice of injury and proofs of loss; No. 11, alleging error in construing the policy as to the amount recoverable for the loss of the sight of one eye; and No. 13, alleging error by granting nonsuit before the appellant had "closed" his case. This last exception does not appear to have been argued.

We grouped the exceptions in the order in which appellant in his typewritten argument treats them.

We will first consider the appellant's Exceptions 1 and 2. Prior to the trial of this case on circuit, the testimony of Lester F. Burke, a resident and citizen of Pittsburgh, Pa., and a witness for respondent, had been taken by deposition, and his testimony along with that of other witnesses for the respondent, and witnesses for appellant, was in the possession of the Clerk of Court for Chesterfield County. The first testimony offered by appellant (plaintiff below) was in *de bene esse* testimony of Mr. Burke. Respondent offered no objection to appellant reading this testimony to the jury, but took the position that if appellant offered the testimony, although at the time of the taking of the deposition Burke was called as a witness for

respondent, he thereupon automatically became appellant's witness. This position of respondent was sustained. Notwithstanding this ruling, appellant read the testimony to the jury, and appeals from the ruling.

Appellant cites and quotes from the case of *Petrie v. Columbia R. R. Co., 27* S. C., 63, 2 S. E., 837, as sustaining his position that the trial Judge erred in ruling that if he published the deposition of Burke, it made Burke his witness; but this question was not before the Court in the *Petrie case,* nor have we been able to find where the exact question has ever been passed upon in this State. All that was decided in the *Petrie case,* and the other cases cited by appellant, is that testimony which has been regularly taken by commission and is in the possession of the Court by reason of having been returned unto the Court in accordance with the statute governing the taking of testimony. *de bene esse* may be published by either or both parties to the cause.

It would appear that there is good reason in the ruling of the trial Judge. The taking of testimony *de bene esse* by a party to an action does not *ipso facto* make such testimony so taken a part of the record. This testimony may or may not be offered by the party at whose instance it has been procured. The statute (Code, 1932, § 706) permitting the introduction of testimony thus taken merely provides a method to be pursued in the interest of economy, the convenience of the witness, and the impossibility of compelling such witness to attend the trial of the case and testify. It would not be contended that a witness in actual attendance upon the Court under a subpoena from a party to the action could be placed upon the witness stand by the adverse party, and yet be considered the witness of the party on whose subpoena such witness was present. The principle is the same.

The true rule on the subject, which is in line with the ruling of the trial Judge, is found in 8 R. C. L., pp. 1166, 1167,

and in 18 Corpus Juris, p. 733, and from which we quote in their order:

"Under the general rule that a party is not permitted to impeach or discredit his own witness, a defendant who offers in evidence a deposition taken on the plaintiff's commission cannot complain of the exclusion of questions asked the witness on cross-examination affecting his credibility, since by offering the deposition he makes the deponent his own witness."

"Without reference to the fact of who has the deposition taken, it will be considered the evidence of the party who offers it in evidence, and a party offering the deposition of the adverse party cannot urge objections to any portion thereof offered by him."

Exceptions 1 and 2 are overruled.

We do not understand from the record that the trial Judge ruled that Burke, chief clerk of the safety and welfare department of Jones & Laughlin Steel Corporation, was, under the laws of the State of Pennsylvania, alleged by appellant in his Exception 3 to have been introduced in evidence, the agent of appellant. Counsel for respondent, in addition to the grounds herein set out on motion for nonsuit, took the position that under the law of Pennsylvania, a group policy is made and deemed to be a contract between the company on the one part, and the employer of the laborer on the other part, and in making the motion read an act of the Legislature of Pennsylvania, but the act was not offered or admitted in evidence. In discussing the motion of respondent, it is true that the Judge made the following statement: "I don't think I am called upon to say whose agent this man, Burke, was; but it seems that under the Pennsylvania law, he would be the agent of the plaintiff."

Following the statement just quoted, the trial Judge had this to say: "It might be said that there is a scintilla of evidence, taking the statement of Mack Baker that he

asked Mr. Burke to file a claim for the loss of his eye, but my understanding of the law is that it must be a reasonable scintilla. It seems to me that this written claim would negative the scintilla."

It will therefore be seen that the trial Court did not pass upon the question if Burke was the agent of appellant or respondent. His ruling was based upon other facts independent of the question of agency.

Exception 3 is overruled.

We will discuss the questions raised by Exceptions 4, 5, 6, 7, 8, and 10 together. The appellant alleges error in the ruling that it was encumbent on the appellant to prove by his case in chief that he had complied with the conditions of the policy with respect to notice and proof of the loss of his eye by accidental means, and that he failed to do so.

We have hereinbefore, in stating the defenses interposed by respondent, set forth the provisions of the contract sued upon with reference to notice, and proof of accidental injury, and will therefore not again set out same.

It is the established law of this State that an insured is under the duty to comply with the conditions of his policy, before he will be entitled to recover benefits provided for therein. See *Perkins v. Life Ins. Co.*, 93 S. C., 88, 76 S. E., 29; *Parker v. Jefferson Standard Life Ins. Co.*, 158 S. C., 394, 155 S. E., 617; *Ford v. New York Life Ins. Co.*, 176 S. C., 186, 180 S. E., 37; *Corley v. Atlantic Life Ins. Co.*, 179 S. C., 95, 183 S. E., 596; and numerous other cases. There are at least two exceptions to this rule: (1) Where the insured is incapacitated from giving notice; and (2) where there has been a waiver of such provisions. It is unnecessary to cite authority for this proposition.

The appellant in this case is not relying on "incapacity", but claims evidence of waiver sufficient to prevent an order of nonsuit, based on the testimony of appellant that he told Burke about the accident on May 25, 1931, and under-

took to file a claim for the loss of his eye, and not for temporary disability, and that until April, 1932, respondent was corresponding with appellant in regard to his claim and putting him to expense and trouble in establishing his claim.

As to the last alleged evidence of waiver, the trial Judge excluded this testimony when it developed that the correspondence, etc., was had with reference to another claim filed by appellant for total and permanent disability, and there was no evidence connecting it with the claim sued upon.

The other alleged evidence of waiver, that is, the testimony of appellant that he told Burke about the injury to his eye, and that when he was filing claim, it was for this and not for temporary disability, and his denial that he gave any such information as is contained in the proof of loss as filed, has given us great concern, but we must concur with the trial Judge that in view of the fact that Burke (appellant's witness) testified that appellant in August, 1931, reported that the condition of his eye was not due to an injury, and the signed statement of appellant at that time that it was not due to an accidental injury, although the appellant undertook to, and did testify that he had an accidental injury to his eye on May 25, 1931, only one reasonable inference can be drawn from the testimony, to wit, that there was no evidence of waiver of the provisions of the policy that "written notice of injury to any Employee insured hereunder must be given to the Company within twenty (20) days after the date of the accident causing injury," and that "affirmative proof of loss * * * must be furnished to the Company within ninety (90) days after the date of the loss for which claim is made."

We do not understand from the record, which is most confusing, that the trial Judge held that the statement in appellant's claim for temporary disability benefits that he had lost the sight of his eye previous to the accident on

May 25, 1931, could not be explained, contradicted, or disputed by the appellant, and was, therefore, conclusive evidence that appellant did not lose the sight of his eye as the result of the accident stated in the complaint. While this testimony was objected to by respondent, appellant testified very fully with reference to same, subject to this evidence being stricken out, but the record does not disclose that such evidence was stricken out: The only evidence of a written claim filed was the claim treated as for temporary benefits, and in this claim, filed on August 20, 1931, it is stated that the loss of the sight of the eye was not due to an accident. Under these circumstances, the trial Judge held in effect that the appellant was estopped by the receipt of benefits under this claim from denying the truthfulness of the statements therein contained, and that any scintilla which had been created by the testimony of appellant as to the attempted filing of a claim for the accidental loss of his eye was negatived by the claim itself and granted a nonsuit. We see no error in this conclusion.

Appellant complains that the Court erred in granting a nonsuit when the plaintiff had rested his case in chief upon the ground that he had not complied with the conditions of the contract of insurance with respect to notice and proof of loss.

"The general rule certainly is that the plaintiff is not to be nonsuited on what constitutes the defendant's defense, but the rule applies only where the decision goes on the defendant's evidence. In such case the jury alone can decide. But, if the defendant's defense be established by the plaintiff's witness, then the objection does not apply." *Hutchison v. Noland,* 1 Hill, 222, quoted with approval in *Cross. v. Siddall et al.,* Westbrook's Advance Sheets, June 12th. (Rehearing pending Sept. 6, 1937.)

The record does not warrant appellant's Exception 9. Appellant voluntarily offered the temporary disability claim in evidence, as shown on page 16 of the Transcript of

Record. It is true that when the Court was about to pass on the motion for a nonsuit, appellant undertook to withdraw this exhibit, but was not allowed to do so, the trial Judge stating that if he did allow it, the respondent could put it in evidence, and the result would be a directed verdict instead of a nonsuit.

We do not deem it necessary to pass upon Exception 11, but it would appear that the dismemberment benefit was not increased from the original amount.

The claim filed on August 20, 1931, and which has been referred to as a claim for temporary disability, or loss of eye—no accident—contained facts which, if true, entitled appellant to total and permanent disability, $54.00 per month for 60 months. However, the present action is under the dismemberment clause of the policy.

All exceptions are overruled, and the order of nonsuit affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.