PENNSYLVANIA THRESHERMEN &
FARMERS' MUTUAL CASUALTY IN-
SURANCE COMPANY, Appellant,

v.

Mrs. Myrtle Louise THORNTON,
Appellee.

No. 7374.

United States Court of Appeals
Fourth Circuit.

Argued April 2, 1957.

Decided May 20, 1957.

Hoover C. Blanton, Columbia, S. C.
(Thomas B. Whaley, and Whaley & Mc-
Cutchen, Columbia, S. C., on brief), for
appellant.

John Gregg, McMaster, Columbia, S.
C., for appellee.

Before PARKER, Chief Judge, and
SOPER and SOBELOFF, Circuit Judg-
es.

SOBELOFF, Circuit Judge.

A casualty insurance company appeals from a judgment obtained against it under an automobile liability policy. The suit was brought by Myrtle Louise Thornton, who, in an earlier action, had recovered judgment against Walter B. Sturgeon, the person insured, for injuries sustained by her in a collision between Sturgeon's automobile and the one in which she was taking a number of children to school. As it was not possible to get satisfaction of her judgment on execution, the sheriff making a return of "nulla bona," she brought this suit against the insurer.

The first issue raised by the insurer is that Sturgeon failed to comply with a condition of the policy [1] by not forwarding to the company the summons with which he was served in Mrs. Thornton's suit; and that, if he did forward the summons as he claims, this was done too late. Additionally, waiver and estoppel are asserted by the plaintiff to meet this defense. A second defense interposed by the insurer is that as the plaintiff's recovery against the policyholder was for punitive as well as actual damages, there is no liability upon the policy. The nature of these defenses will become clearer from a recital of the facts.

The collision out of which this litigation arose occurred on October 9, 1953. The plaintiff's lawyer promptly wrote the Harper Insurance Agency, which had sold Sturgeon his policy, advising it of the accident and inviting discussion of his client's claim with a view to settlement. Again on March 18, 1954 he wrote to the defendant's insurance adjustor, but efforts to settle the claim failed and the plaintiff sued Sturgeon in the Court of Common Pleas of Richland County, South Carolina. The summons and complaint were served on Sturgeon on June 11, 1954, while he was a prisoner serving a short term in the State Penitentiary of South Carolina. Under the prevailing practice in that Court his answer was due within twenty days of the summons, so that, counting from June 11, 1954, answer was required to be filed by July 1. He was released from custody on June 29, 1954, and testified that on July 2, within three days after his release, and on the twenty-first day after service upon him, he took the summons and complaint to the office of the Harper Insurance Agency and left it with one of its employees.

For more than three months thereafter the insurance company took no action. According to its testimony, it remained inactive during this period because it never received the summons from Sturgeon. It claimed that Sturgeon's first communication was a phone call to the Harper Agency on October 11, 1954, to inquire about the suit, when he told of having previously delivered the paper to the Agency. On that same day Harper notified the Company's adjustor, who contacted Sturgeon the next day and procured a non-waiver agreement and a signed statement of the accident. By this agreement the Company undertook, with Sturgeon's consent, to conduct the defense of the pending suit, upon the understanding that this should not be construed as a waiver of the Company's right, if in fact it had such right, later to deny liability and withdraw from the case.

Ten days later, on October 22, 1954, the insurance company filed a special appearance on behalf of Sturgeon, seeking to set aside the service of process made upon him, on the asserted ground that the Court was without jurisdiction be-

---

[1] The relevant provisions of the policy are as follows:

"Conditions * * *

"2. Notice of Claim or Suit—Coverages A and B: If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

    *     *     *     *     *

"6. Action Against Company—Coverages A and B: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, * * *."

cause service upon a prisoner by a specially appointed deputy sheriff was invalid. See Section 10–436, 1952 Code of South Carolina. It did not, however, then file a plea or ask leave of Court to do so, or seek consent of the plaintiff's counsel so to do. At that time no default judgment had yet been taken against Sturgeon; judgment by default was not awarded the plaintiff till December 1, 1954.

When the motion to set aside the service of summons came on for hearing on January 24, 1955, it was denied. This action was appealed to the Supreme Court of South Carolina and affirmed. Thornton v. Sturgeon, 227 S.C. 294, 87 S.E.2d 821. In the meantime, while the insurance company was prosecuting its motion to set aside the service, and making no effort to open the default and plead to the merits, the case was referred to a master, who took testimony, reported his findings and recommended judgment for $10,000 for actual and punitive damages. The Court gave judgment accordingly.

It was not until February 5, 1955, after the challenge to the service was denied, and after judgment had been made final, that the insurance company moved for the first time to open up the default and sought permission to file a responsive pleading. This effort proved unsuccessful, the Common Pleas Court holding that making no effort to file an answer till February 5, 1955 constituted inexcusable delay.

The present action was commenced on July 27, 1955, also in the Court of Common Pleas for Richland County, and was removed to the U. S. District Court. Verdict and judgment there were for $5,000, the limit of the policy.

## I.

■ The requirement in a policy that the insured shall "immediately" turn over to his insurance company any summons or complaint served on him has been interpreted by the courts to mean, not instantaneously, but within a reasonable time. What is reasonable is, of course, a fact question, to be determined in each case according to the surrounding circumstances. Kravat v. Indemnity Ins. Co. of N. A., 6 Cir., 152 F.2d 336; Young v. Travelers Ins. Co., 5 Cir., 119 F.2d 877; Zauderer v. Continental Casualty Co., 2 Cir., 140 F.2d 211; Callaway v. Central Surety and Ins. Corp., 5 Cir., 107 F.2d 761; and LaSage v. Utilities Ins. Co., 5 Cir., 131 F.2d 536.

■ We must assume, as the jury evidently found, that the papers were in fact delivered on July 2, 1954, after the expiration of the twenty day period within which a defendant is required to plead. The plaintiff contends that a lapse of twenty-one days between service on Sturgeon and delivery of the papers to the insurer was not an unreasonable time. The fact that Sturgeon was in prison till June 29 and turned the papers over to the insurer within three days after his release, is pointed to by the plaintiff as showing the reasonableness of the delay. In opposition to this, the company argues that even in prison Sturgeon might have arranged for the delivery of the papers earlier. The point is fairly arguable and was properly presented by the District Court to the jury for decision. The insurer insists that on the twenty-first day after service the defendant in the suit was, under the rules of the Court, already in default, and that this is itself sufficient to make the delay an unreasonable one as a matter of law. We do not think such decisive significance can be ascribed to this circumstance. Not prejudice to the insurer, but unreasonable delay by the insured, is the test. The question of prejudice has been held immaterial in cases of unreasonable delay. Free v. United Life & Accident Insurance Co., 178 S.C. 317, 182 S.E. 754. Likewise, prejudice is immaterial where delay by the insured is deemed in fact not unreasonable, even though because of default in pleading, the defense of the suit may be made more burdensome. By way of illustration, if it were shown that the insured became ill and unconscious on the day he was served and remained so for twenty-one

days or longer, it could not be contended that he had released the insurer by not turning over the papers during his disability.

## II.

It is to be noted, however, that the delay of a single day beyond the normal time for pleading cannot be said to have been a serious factor in this case; or at all events, it need not have been a matter of consequence if the insurance company had acted with expedition. After July 2, when Sturgeon says he delivered the papers, and even after October 12, when the company admittedly received the papers, it did not apply promptly to the Court for an opportunity to plead. Such application, certainly on the earlier date, and even on the later one, was not foredoomed to failure, for courts, in the exercise of their discretion, frequently relieve litigants from the consequences of their default, especially if applied to before final judgment. Section 10–609 of Code of Laws of South Carolina; Bomar v. Means, 47 S.C. 190, 25 S.E.2d 60. The insurer elected to take over the defense of the action and, instead of seeking leave to defend on the merits, chose to raise a technical question as to the validity of service made upon a prisoner. When it belatedly applied for an opportunity to plead, judgment for $10,000. had been entered, and the appeal for discretionary consideration had become stale.

■■ It is true that the insurer was defending under a reservation of its rights. This preserved whatever rights it had when the agreement was made, but did not excuse it from conducting the defense with due regard for the preservation of the rights of the insured. His consent to non-waiver pertained to past events, not to anything that might arise in the future. The insurance company could not take control of the defense and yet allow the position of the insured to be worsened by allowing many more weeks to pass without making a reasonable endeavor to interpose a plea. Because no such effort was initiated until after final judgment, the opportunity which existed in July and even in October, with reasonable chance of success, was frittered away. The non-waiver agreement did not contemplate this and does not protect the insurance company against the consequences of its dilatory procedure.

If the company had announced an election to abstain from the defense and notified Sturgeon to arrange for his own lawyer to assume this responsibility, or even if it had undertaken the defense, as it did, but consulted Sturgeon whether or not to pursue the attack on the service of process, while the effort to obtain permission to plead was held in abeyance, we should perhaps have a different question. As such is not the case before us, we need not decide the question. The insured here was given every reason to believe that the insurer would promptly and diligently exert all appropriate and customary efforts to overcome the default in pleading. He had no reason to think otherwise or to take independent measures, and he was not consulted as to tactical maneuvers which resulted in the attrition of a chance to meet the case on the merits.

The insurer may have felt that there was no good defense on the merits and was, on that account perhaps, willing to sacrifice the chance. This decision, however motivated, it made at its peril. The fact that the challenge to the jurisdiction could not be pressed simultaneously with an endeavor to reopen the case for pleading should have been a factor in determining its course; but the insurance company was not at liberty to abandon the rights of the insured at its sole option. An insurer cannot act as this insurer did and still insist that it has been relieved of its policy obligations because the papers were delivered to it too late.

The South Carolina Supreme Court said in Dubuque Fire & Marine Ins. Co. v. Miller, 219 S.C. 17, 64 S.E.2d 8, 12:

"The words 'waiver', 'estoppel', and 'implied ratification' appear rather frequently in insurance cases and are sometimes used interchange-

ably, although distinguishable in some respects. The principle expressed by the use of these terms is recognized in the law as tending to the furtherance of justice. The rule is succinctly and correctly stated in the following quotation from 45 C.J.S. Insurance § 672, p. 610: 'An insurance company may waive, or be estopped to assert, a ground for avoidance or forfeiture of an insurance policy, and the courts are prompt to seize on any circumstances which indicate a waiver on the part of the company or which will raise an estoppel against it.' "

This language has been repeatedly quoted and applied in this Court. See Farm Bureau Mutual Auto Ins. Co. v. Bobo, 4 Cir., 214 F.2d 575, 577; Dubuque Fire & Marine Ins. Co. v. Wilson, 4 Cir., 213 F.2d 115, 118; Ollie v. Security Mutual Underwriters, 4 Cir., 235 F.2d 932.

We think it correct to say both that the insurer has waived its defense, and that it is estopped by its conduct from asserting it.

### III.

The other contention of the insurer is that it should escape liability because the judgment obtained by Mrs. Thornton against the insured included punitive as well as actual damages. It is said that punitive damages are for willful acts, rather than negligence, and the premise of the argument is that the policy covers negligence and not intentional acts. The proposed distinction, for this purpose, between the two kinds of damages, cannot stand. In South Carolina, it is true, punitive damages are allowed where there is proof of willful, reckless or malicious violation of a person's rights; Davenport v. Woodside Cotton Mills, 225 S.C. 52, 80 S.E.2d 740, 744; American Oil Co. v. Colonial Oil Company, 4 Cir., 130 F.2d 72; Darlington County Fair & Driving Ass'n v. Atlantic C. L. R. Co., 90 S.C. 436, 73 S.E.

790; Gwynn v. Citizens Telephone Co., 69 S.C. 434, 48 S.E. 460, 67 L.R.A. 111; and it must be more than "mere gross negligence" Hicks v. McCandlish, 221 S.C. 410, 70 S.E.2d 629, 631. This Court, declaring the rule of South Carolina, which prevails in many other jurisdictions, has said that "recklessness is the equivalent of * * * intentional wrong." Galloway v. General Motors Accept. Corp., 4 Cir., 106 F.2d 466, 470. Because of such expressions the proposition is advanced by the appellant that we should treat this case like one where the driver of an automobile deliberately inflicts injury upon a person, that is to say, we should regard the case as an assault and battery and not an accident within the meaning of the policy.

Glens Falls Indemnity Co. v. Atlantic Bldg. Corp., 4 Cir., 199 F.2d 60, and other cases to which we are referred, are not applicable in the present situation. Negligent conduct may be so gross as to merit characterization as willful and wanton in the sense of the rule for punitive damages, yet fall far short of an assault and battery which would distinguish it from an accidental event and withdraw it from the coverage of the policy. Punitive damages are not limited to assaults and batteries, and the award of such damages does not convert the case into an assault and battery. To allow the appellant's argument would lead to the illogical and indefensible result, contrary to the purpose and spirit of liability insurance policies, which are designed to protect members of the public, that the more extreme the recklessness the more likely the insurer would be to escape liability. There was no claim at the trial and there is no intimation in this record that the insured, however reckless he may have been, intentionally used his automobile as a weapon to injure the plaintiff.

For the reasons assigned, the judgment is

Affirmed.