Dr. John L. BRUCE, Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.

Dr. John L. BRUCE, Plaintiff,

v.

CENTRAL MUTUAL INSURANCE COMPANY, Defendant.

Civ. A. Nos. 66-670, 66-671.

United States District Court
D. South Carolina,
Florence Division.

Dec. 19, 1967.

Philip H. Arrowsmith, Florence, S. C., for plaintiff.

James C. McLeod, Jr., Florence, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This is a declaratory judgment action brought by plaintiff against the defendant insurers to require them to defend fourteen law suits brought against him in the Court of Common Pleas of Florence County, alleging various acts of desecration to a family cemetery. The present cases were originally filed in the Court of Common Pleas for Florence County. Upon defendants' petitions both were removed to this court. United States Fidelity & Guaranty Company and Central Mutual Insurance Company, hereinafter referred to as insurers, through their attorneys, moved for consolidation of the two declaratory judgment actions and the same were consolidated for trial by order of The Honorable Robert W. Hemphill, United States District Judge, October 4, 1966.

Central Mutual Insurance Company under its policy number FCP–51614 provided certain coverage to its insured, the plaintiff herein, during a period from April 19, 1963 to April 19, 1964. Defendant, U. S. Fidelity & Guaranty Company, provided similar coverage to plaintiff under policy number FCP–165080 during the period from December 20, 1962 to December 20, 1963. Insofar as this action is concerned, all of the pertinent policy provisions of both policies are identical and the only relevant differences are the effective dates and amounts of coverage.

Central Mutual coverage was in the amount of One Hundred Thousand and 00⁄100 ($100,000.00) Dollars for 'each occurrence', and United States Fidelity & Guaranty coverage was on the same basis in the amount of Twenty-five Thousand and 00⁄100 ($25,000.00) Dollars.

Plaintiff's complaint alleged that certain property conveyed to him reserved one acre of land, which was set aside and dedicated as a family cemetery and that fourteen suits, each in the amount of Seventy-five Thousand and 00⁄100 ($75,-000.00) Dollars, was instituted against him seeking actual and punitive damages for certain acts of desecration of the family cemetery.

Defendants answered and incorporated the policies of insurance into the answers and pleaded same in bar of plaintiff's allegations of coverage. Defendants denied that the policies covered the acts of desecration set forth in the fourteen pending suits in the Court of Common Pleas of Florence County against Dr. Bruce, and they further alleged plaintiff's noncompliance with conditions precedent requiring written notice of occurrence and also immediate notice of suit.

Defendants further contended that the acts complained of in the lower court suits were intentional acts or occurred at the direction of the insured, and that coverage on this ground was excluded by the provisions of the policies.

Defendants further alleged that various acts or omissions of the plaintiff-insured resulted in prejudice to defendant-insurers through failure to move to make the complaints more definite and certain regarding identity of the alleged agents, servants or employees who committed the acts of desecration, and in failing to require the Collins family to bring their various actions as a consolidated class action avoiding a multiplicity of actions.

Additionally, the defendant-insurers asked the court to determine, in the event there was coverage, that only one occurrence under the terms of the policy is applicable and that the amount of coverage would not, therefore, be in excess of the policy limits for one occurrence.

Pretrial conferences were held by Honorable Robert W. Hemphill on May 9, 1967 and on October 17, 1967. Counsel for plaintiff and defendants entered into a written stipulation dated October 13, 1967 and duly filed with the court. Judge Hemphill filed a pretrial order dated October 18, 1967.

Although various issues were presented, the court finds it unnecessary to resolve all of them. In the final analysis there exists only one issue controlling the determination of this suit—the question of whether timely notice was given to the insurance companies as required as conditions precedent to coverage under the policies.

In connection with this issue the court will also consider the questions of waiver and prejudice.

The case was heard in Florence, South Carolina, on October 25, 1967 by the court without a jury. Therefore, in accordance with Rule 52(a) of the Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

In the early 1950's plaintiff purchased a farm in Florence County, South Carolina on which approximately one acre was reserved and set apart as a graveyard. This graveyard was known as the Collins cemetery and interred therein are ancestors and relatives of the plaintiffs in the fourteen suits filed in the Court of Common Pleas of Florence County.

Some time in the spring of 1963 plaintiff, with the aid and assistance of the United States Soil Conservation Program and the County of Florence, cleared out and improved a pond site and built a road entering the area for the purpose of establishing recreation facilities for the use of the Boy Scouts. The Collins graveyard was adjacent to the area being improved. Beginning on April 10, 1964 the first desecration suit was commenced in the state court against plaintiff, and during April and May of 1964 the other thirteen suits were brought against him by various members of the Collins family and others who had relatives buried in the Collins cemetery. Each complaint demanded $75,000 actual and punitive damages for alleged desecration of the graveyard by plaintiff. The exact dates of any alleged desecration was not established from the testimony and the court finds it unnecessary to so establish them for reasons which will appear later.

The commencement of the suits was apparently the first notice that Dr. Bruce had of any such claims, although previously he had had some conversation at his hospital with a Mrs. Braddock concerning what took place at the cemetery. However, no specific claim was made during their conversation.

Upon receiving the summonses and complaints Dr. Bruce contacted his personal attorney, P. H. Arrowsmith, Esquire, and retained him to represent him in these suits.

Although some efforts were made by Dr. Bruce, Mr. Frank Posey his business manager, and Mr. Arrowsmith his attorney, to determine whether any insurance coverage existed, none was actually discovered and they concluded that none

existed. Plaintiff's attorney, Mr. Arrowsmith, then proceeded with the defense of the suits without any written or oral notice being given to either of the insurers.

There was no testimony that anyone acting for Dr. Bruce, including his personal attorney, gave written notice of the occurrence of the acts of alleged desecration to defendant insurers, as required by the policies. Furthermore, there was no notice given to either of the insurers when the fourteen suits were filed by members of the Collins family in 1964. Mr. Arrowsmith testified that he had some telephone conversations in 1964 with both Mr. Stewart Gregg of Miller, Arthur & Gregg, and Mr. George Weeks of Barnwell Insurers concerning the suits, but it is not necessary to conclude whether in fact Mr. Arrowsmith had telephone conversations in 1964 as testified, because he admitted that he did not write to either Mr. Gregg or Mr. Weeks or to United States Fidelity & Guaranty Company and Central Mutual Insurance Company in 1964, and neither did he forward copies of the suit papers to either of the companies or their agents in Florence, South Carolina. If in fact such conversations occurred in 1964, the conversations were vague and indefinite, and failed to comply with the controlling provisions of the two policies.

Both policies of insurance include the following under "Conditions:"

"*Notice of Occurrence*—L and M: When an occurrence takes place, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

"*Notice of Claim or Suit*—Coverage L: if claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representatives."

Following an unrelated accident at the Bruce home in 1965 it appeared that there might be coverage for the desecration suits and an investigation by Mr. Arrowsmith followed.

As a result of that investigation the coverage of defendants' policies was determined. Mr. Arrowsmith then telephoned defendant Central Mutual's office in Atlanta on January 6, 1966, and wrote Miller, Arthur and Gregg, representatives of defendant United States Fidelity & Guaranty, on January 10, 1966. Mr. Arrowsmith testified that he nor any other representative of plaintiff gave any notice in writing to either insurer prior to his letter of January 10, 1966. The telephone call of January 6, 1966 was the first notice to Central Mutual, and the letter of January 10, 1966 the first notice to United States Fidelity & Guaranty Company. The suit papers were turned over to the insurers during January 1966. Approximately one year and nine months elapsed after the suits were filed before any notice thereof was given to the insurers; and almost three years had elapsed after the alleged wrongful acts were committed "in the Spring of 1963" before any notice was given.

At that late date adjusters for both United States Fidelity & Guaranty Company and Central Mutual then got in touch with Mr. Arrowsmith and began their investigations of the matter.

Central Mutual obtained a non-waiver agreement and United States Fidelity & Guaranty notified Dr. Bruce it was proceeding under full reservation of rights under its policy.

Mr. Arrowsmith's files concerning the desecration suits were then turned over to the attorneys for the insurers, and they were returned to Mr. Arrowsmith in March 1966 after both insurers notified Dr. Bruce of their withdrawal from the cases.

Within a month or less of the giving to insurers of the first notice of occurrence and suits, the first case was to be

tried at the next term of Common Pleas Court for Florence County set to begin on February 7, 1966. After a continuance, this case was tried during the April 1966 term, resulting in a verdict against Dr. Bruce for $750 actual damages. The other thirteen cases are apparently being held in abeyance pending the outcome of this declaratory judgment action.

### CONCLUSIONS OF LAW

The court has jurisdiction of the parties and of the subject matter of this action.

■ There exists an actual controversy between the parties and therefore a declaratory judgment proceeding is proper under 28 U.S.C.A. § 2201.

Conditions 3 and 4 of the policies in question entitled "Notice of Occurrence" and "Notice of Claim or Suit", which have been previously set out hereinabove, are made conditions precedent to coverage under the policies by Condition 8 entitled "Action Against Company—Coverage L," which provides as follows:

"No action shall lie against the Company unless, as a condition precedent thereto, the insured should have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company."

Upon actual and written notice of the institution of suits in January 1966, both companies without delay, undertook the necessary steps to secure either nonwaiver agreements or reservation of rights. Both promptly began an investigation of the situation and after such investigation gave notice of withdrawal in March 1966. The defensive pleadings and all matters pertaining to the suits on behalf of Dr. Bruce had been handled entirely by his attorney, Mr. Arrowsmith.

■ The law in this State is well settled that the insured is under the duty to comply with the conditions of his policies before he is entitled to coverage or benefits thereunder. And "[N]o rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover. And the court has gone so far as to hold that the failure to give the required notice in the allotted time is fatal to the right of recovery, *even if it be shown that the insurance company had suffered no harm by the delay.*" (Emphasis added). Lee v. Metropolitan Life Ins. Co., 180 S.C. 475, at p. 487, 186 S.E. 376, at p. 381 (1936); Free v. United Life & Accident Ins. Co., 178 S.C. 317, 182 S.E. 754 (1935). In Baker v. Metropolitan Life Ins. Co., 184 S.C. 341, at 350, 192 S.E. 571, at 575, 134 A.L.R. 205 (1937), the court stated two exceptions to this rule: "(1) Where the insured is incapacitated from giving notice; and (2) where there has been a waiver of such provisions."

■ In the present case there is no contention of incapacity, and as both insurers either proceeded under a reservation of rights or a nonwaiver agreement, there has been no waiver. Nor are there any facts or circumstances giving rise to an estoppel on the part of insurers to claim the benefits of such provisions.[1]

"In general * * * conduct which amounts to a waiver of a condition providing for the forwarding to the insurer of the summons or other process served upon the assured is that which lulls the insured into a feeling of security and renders it unconscionable for the insurer subsequently to raise the objection that such papers were not forwarded." Boyle Road & Bridge Co. v. American Employers' Ins. Co., 195 S.C. 397, 402, 11 S.E.2d 438, 441 (1940).

Such is not the case here as each of the insurers proceeded under reservation of

---

1. During the trial, plaintiff's counsel stipulated that plaintiff did not contend that defendant insurers were in any way at fault in plaintiff's delay in giving notice of the occurrence or of the suits.

rights or nonwaiver agreement. As the South Carolina Supreme Court stated in Boyle, supra, 195 S.C. at 405, 11 S.E.2d at 442:

"The policy and the conditions therein define and fix the relations between the contracting parties, and furnish the measure of their respective rights and liabilities. Courts cannot go outside of the agreement of the parties to determine their mutual or reciprocal obligations. To do so would have the effect of imposing terms to which they had not assented, or absolving them of duties which they had voluntarily assumed."

A more recent case, Squires v. National Grange Mut. Ins. Co., 247 S.C. 58, 145 S.E.2d 673 (1965), has continued to follow the *Lee* doctrine. In *Squires* it was said that, unless waived by the insurer, the failure of the insured to comply with the policy provisions by giving the requisite notice or by the forwarding of suit papers which are made conditions precedent to liability, will bar recovery.

Under the conditions of defendants' policies, plaintiff was under a duty to give reasonable notice of occurrence and to forward to defendants within a reasonable time suit papers served upon him. In Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co. v. Thornton, 244 F.2d 823, at 825 (4th Cir. 1957) the Court stated:

"The requirement in a policy that the insured shall 'immediately' turn over to his insurance company any summons or complaint served on him has been interpreted by the courts to mean, not instantaneously, but within a reasonable time. What is reasonable is, of course, a fact question, to be determined in each case according to the surrounding circumstances."

In accord is Walker v. New Amsterdam Casualty Co., 157 S.C. 381, 154 S.E. 221 (1930) where the Court said "immediately" means with reasonable promptness under the circumstances. See also Brown v. State Mutual Ins. Co., 233 S.C. 376, 104 S.E.2d 673 (1958) where the court at page 682 stated:

" 'The time words in the clause, "as soon as practicable" are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice "as soon as possible". In terms, they require notice "as soon as practicable" and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause.' "

From the circumstances in the instant case the court concludes, as a matter of law, that plaintiff failed to use due diligence to determine that he had liability coverage for the alleged wrongs set forth in the fourteen suits soon after they were commenced against him; that the delay in giving "notice of occurrence, and of claim or suit" for almost two years was unreasonable, without justification, and failed to comply with the notice requirements of the policies.

In the exercise of reasonable diligence and care, Dr. Bruce should have been able to determine that he had farm liability coverage when the suits were first commenced against him. The agents through whom he purchased all of his insurance billed him regularly for the premiums. These statements of premiums due included the policy numbers, their effective dates, and the name of the insurer. Dr. Bruce and Mr. Posey, his business manager, testified that either one or the other wrote all checks for the payment of these premiums, and had the invoices, cancelled checks and check stubs in their possession. It would have been a simple matter for his attorney to have secured copies of and inspected all of his liability policies to determine if he had liability coverage, rather than to rely upon purported phone

calls to some of his insurance agents who had no legal training inquiring as to whether he had coverage to protect him in connection with the matters alleged in the complaints. Under such circumstances, plaintiff is not entitled to claim that the conditions precedent of the policies as to notices of occurrence and suit were waived because he did not know or learn at that time of his liability coverage of defendants' policies. It is obvious that Dr. Bruce's insurance affairs were not handled in very much of a business like manner, since he actually had two farm liability policies with two different companies in effect during 1963, and he, his farm manager, and his personal attorney did not discover the existence of such coverage until about two years later; and then by a mere coincidence.

Plaintiff strongly contends that defendants, before they can claim forfeiture of coverage under the policy notice provisions, must show prejudice to them resulting from the delay. With such contention the court cannot agree.

Although the South Carolina Court has held that it is necessary that the insurer show prejudice by an insured's failure to cooperate with the insurer in order for the insurer to avoid coverage under the cooperation clause, Crook v. State Farm Mutual Automobile Ins. Co., 235 S.C. 452, 112 S.E.2d 241 (1960), and Pharr v. Canal Ins. Co., 233 S.C. 266, 104 S.E.2d 394 (1958), such is not the case in reference to the notice provisions of an insurance policy. It is unnecessary to determine whether the insurers were prejudiced by the delay since the question of prejudice has been held immaterial in such cases. Lee v. Metropolitan Life Insurance Co., supra; Free v. United Life & Accident Insurance Company, supra; and Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Thornton, supra; 18 A.L.R.2d 479.

As Judge Sobeloff stated in *Pennsylvania Threshermen,* supra, which was a case from South Carolina applying the law of this State, "[N]ot prejudice to the insurer, but unreasonable delay by the insured, is the test."

The court concludes that plaintiff has failed to comply with the conditions precedent in defendants' policies by not giving reasonable notice to defendants of occurrence or the filing of suits against him, and has, therefore, forfeited coverage under both of defendants' policies. It is therefore

Ordered that the complaints in the above entitled actions be, and the same are, hereby dismissed with costs.

Let judgment be entered accordingly.