## CONTINENTAL CASUALTY CO. v. MONVOISON et al.

### No. 17332.

Court of Appeal of Louisiana, Orleans.

May 6, 1940.

Rehearing Denied May 20, 1940.
Writ of Certiorari Denied July 18, 1940.

Deutsch and Kerrigan, of New Orleans, for appellant.

O. H. Dabezies and Geo. E. Konrad, both of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit by the Continental Casualty Company of Indiana against James J.

Monvoison, Mrs. James J. Monvoison and Sidney J. Kernion, in which it is alleged that the Consolidated Parcels, Inc., a Louisiana corporation, hereinafter called the corporation, was liquidated and its assets distributed to the parties named, without regard to the rights of the plaintiff as a creditor of the corporation, in the sum of $120.69; which still remains due and owing. Judgment is prayed for against the three defendants in solido.

The defense was in effect a general denial and a special plea of estoppel.

There was judgment below in favor of the defendants dismissing plaintiff's suit and it has appealed to this court.

James J. Monvoison and his associate defendants, who were engaged in the parcel delivery business, under the corporate name of "United Parcels, Inc.," negotiated with Mr. M. P. Boulet, the president of the corporation, a competing business, for its purchase. Meanwhile an audit of the corporate affairs was made by the firm of Caballero & Miller, Public Accountants for Monvoison's account. As a result of the audit, all creditors were contacted and all bills were paid by Mr. Boulet as of June 4, 1938. After Monvoison had purchased all the stock of the corporation and, as an additional precaution, an advertisement was placed in the local newspapers announcing that the corporation would be liquidated as of June 30, 1938, and all creditors were invited to present their claims. No creditors appeared in response to this advertisement, but about five months later, the plaintiff presented its claim to Monvoison for payment, alleging it to be due it as an insurance premium in connection with a liability policy which it had issued to the corporation. It appears that the corporation had operated a number of motor vehicles and that it had obtained a "fleet policy". When the policy was taken out, the insured paid $1,734.66, which was called "an initial premium". This premium was subject to be increased or decreased during the term of the policy depending upon the number of motor vehicles in use from time to time. It contained the following clause: "The Company shall be permitted at all reasonable times during the Policy Period to inspect the automobiles and trailers covered hereby and to audit the Named Assured's books and other records at any time during the Policy Period or within two years after the expiration of this policy."

It was issued on September 30, 1937, for a period of one year and was cancelled on April 23, 1938. Emery & Kaufman, Inc., were the local agents for the plaintiff, Continental Casualty Company. During the audit made by Caballero & Miller, Emery & Kaufman were asked for a statement of the account of the corporation, and informed the auditors that no sum was due their principal, the Continental Casualty Company, but, on the contrary, there was a balance to the credit of the corporation in the sum of $6.14. Several statements confirming this credit balance were sent to the corporation.

Mr. Boulet testified without contradiction, that he called at the office of Emery & Kaufman, Inc., advising them of the impending sale of the stock of the company to Monvoison, and inquired about issuance of a bond to Monvoison to guarantee that the Company was free of debt. However, the idea of the bond seems to have been abandoned.

Mr. S. H. King, who was in the employ of Emery & Kaufman at the time, though he later left their employment, testified on behalf of defendants that he had handled the transaction for Emery & Kaufman and had discussed the question of the sale of the business to Monvoison, with his employers and with Mr. Boulet.

During the early part of July, 1938, the exact date being uncertain from the record, Emery & Kaufman, notwithstanding its repeated statements to the effect that it was indebted to the corporation in a small amount, announced that there was a balance due plaintiff of $120.69, this computation having been made as a result of a visit by W. R. Barnes, a travelling auditor of the Continental Casualty Company, though he did not himself make an audit of the books.

The plaintiff contends that the plea of estoppel was without merit, because of the existence of a clause in the policy to the effect that "no notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the President or Secretary of the Company." In support of this contention the following is quoted from the decision of the Supreme

Court in the case of Shuff v. Life & Casualty Insurance Company of Tennessee, 1927, 164 La. 741, 114 So. 637, 639: "When, in an insurance policy, it is declared to be the complete and only evidence of the contract between the company and the insured, there is no reason why any of its stipulations, if unambiguous and reasonable and such as the parties are competent to make, should not be as effective as they would be in any other instrument intended to be the only evidence of a certain contract. In every case where a court has held that an insurance agent could, in spite of a prohibition written in the policy, bind the company by his waiver of a stipulation written in the policy for the protection of the company, the decision was founded upon the finding or assumption that the insurance company was in the attitude of having held out to the insured or to the public that the agent has the authority assumed by him, so that the insured in such case was, through the fault of the company, led to believe that the agent had the authority to bind the company. But, when the company is not guilty of any deception or misrepresentation, either express or implied, and the agent does something in violation of a prohibition contained in the instrument in which it is declared that it constitutes the entire evidence of the contract between the company and the insured, the agent is acting for himself and not as agent of the company, and he alone, if any one, is answerable to the insured for the consequence of any such false pretense."

The cited authority is not applicable here. Emery & Kaufman, Inc., were the local fiscal agents of the Continental Casualty Company. They issued statements of account to local creditors and collected the premiums due. They were, therefore, held out as having the authority to represent the Continental Casualty Company. The situation is analogous to that obtaining in the following cases, with the important difference that here the agent was specifically advised of the importance of the information requested and had ample time to ascertain the true condition. Gitz Sash Factory, Inc. v. Union Insurance Society of Canton, Ltd., 160 La. 381, 107 So. 232; Fidelity & Casualty Company of New York v. Aetna Homestead Association, 182 La. 865, 162 So. 646; United States Fidelity & Guaranty Company v. Putfark, 180 La. 893, 158 So. 9; Wuertz v. Life &

Casualty Insurance Co. of Tennessee, 10 La.App. 70, 120 So. 72.

In 32 Corpus Juris, page 1059, Verbo "Insurance, Section 135, we find the following: "As in case of other agencies, an insurance company will be estopped to deny that a certain person is its agent or possesses the authority he assumes to exercise, where it knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he is the company's agent or possesses the authority exercised."

Nor is there any merit in the contention that the statements of Emery & Kaufman did not mislead the defendants to their prejudice or injury, for while it is true, that Monvoison testified that he would probably have bought the corporation even though he had had to pay the $120.69, sued for, nevertheless it certainly would have been a factor in the price paid by him for the stock in the corporation.

In our opinion the plea of estoppel is well founded and should be maintained, consequently, and for the reasons assigned the judgment appealed from is affirmed.

Affirmed.