499 So.2d 963 (1986)
ECONOMY AUTO SALVAGE, INC., Plaintiff-Appellee-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant-Appellee, and
Ronnie Nelson and Causey Insurance Agency, Inc., Defendants-Appellees,
Louisiana Bank and Trust Company, Intervenor-Appellee.
No. 85-786.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
Writ Denied December 12, 1986.
*966 Woodley, Barnett, etc., James B. Doyle, Lake Charles, for defendant-appellant.
Reggie & Harrington, etc., Oscar W. Boswell, II, Crowley, for intervenor-appellee.
Craven, Scott, & Weeks, John W. Scott, Alexandria, John P. Navarre, Oakdale, for plaintiff-appellee-appellant.
Stafford, Stewart & Potter, Paul Boudreaux, Robert L. Royer, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and YELVERTON, Judges.
DOMENGEAUX, Judge.
Plaintiff-appellee-appellant, Economy Auto Salvage, Inc., instituted this action against defendant-appellant-appellee, Allstate Insurance Company, seeking to recover the proceeds of an alleged binder of fire insurance covering the plaintiff's building. The alleged binder of fire insurance was issued by defendants-appellees, Ronnie Nelson and Causey Insurance Agency, Inc., (formerly known as Nelson Insurance Agency, Inc.).
The catalyst for this lawsuit was a fire in the early morning hours of July 20, 1981, which destroyed the allegedly insured building owned by Economy Auto Salvage, Inc., and located at 1930 Third Street, Alexandria, La. The stock in Economy Auto Salvage is owned by Mr. and Mrs. Howard Joffrion.
Louisiana Bank and Trust Company, of Crowley, La., as a mortgagee of the destroyed building and as a loss payee in the alleged binder of insurance, intervened in the lawsuit.
Allstate generally denied the allegations of the plaintiff's petition and set forth affirmatively the defenses of arson and the nonexistence of a contract of insurance between Allstate and Economy Auto Salvage.
Following a bench trial, the district court rendered judgment in favor of the plaintiff and the intervenor and against Allstate Insurance Company, Inc.
Allstate appeals the decision of the district court and Economy Auto Salvage answers the appeal seeking penalties and attorney's fees.
Economy Auto Salvage, Inc. was the brainchild of one of its stockholders, Howard Joffrion, Jr. Mr. Joffrion, a prominent member of Alexandria's black community, envisoned creating a business which would create jobs and train unskilled workers while at the same time, make a profit. Economy Auto Salvage, Inc. was set up as a three phase business which would take used and wrecked autos and salvage and sell those parts which were still valuable for resale, refurbish and sell secondhand cars and sell what was useless as scrap metal.
The operations of Economy Auto Salvage took place on the premises located at 1930 Third Street, Alexandria, La. The building located at that address had previously been used as a bus barn for Continental Trailways Bus Lines. Mr. Joffrion and his brother, Earl Joffrion, leased the building from Continental Trailways for approximately two years and during that time Economy Auto Salvage operated on a small scale out of that building.
Wishing to expand the business, Joffrion sought to secure a loan which would be guaranteed by the Farmer's Home Administration (FMHA). Pursuant to these ends, Mr. Joffrion hired a CPA and an economist/business advisor to assist him in completing a proposal and application to the FMHA and to assist in finding a bank which would be willing to make the loan.
Ultimately, Mr. Joffrion's business was approved for a loan guarantee by FMHA and he secured a loan from Louisiana Bank *967 and Trust of Crowley in the amount of $348,000.00. Economy Auto Salvage then purchased the building at issue here with $42,000.00 of the funds from the loan. The loan was in part secured by a collateral mortgage on the building which required fire insurance covering the building with the policy naming the bank as a loss payee. It was also required, both by the mortgage and the regulations of the FMHA, that the insurance be for a sum sufficient to insure full replacement value of the building.
Having secured the loan and purchased the building, the plaintiff contracted with Charles Faircloth, a general contractor, to renovate the building. The contract cost of renovation was $106,000.00. To meet the insurance requirements of the loan, the plaintiff secured a $200,000.00 "builder's risk" insurance policy from Alexandria Insurance Agency.
Renovations on the building commenced and on July 6, 1981, when the work was between 85% to 90% complete, Mr. Clarence Ardoin, the President of Louisiana Bank and Trust, visited the building. During that visit Mr. Ardoin expressed his dissatisfaction with the current insurer because the agent had not yet delivered the policy or the certificates of insurance. Mr. Ardoin also indicated that the insurer was a minor insurance company and that he would feel safer if insurance was purchased from a large national insurer. It was also Mr. Ardoin's opinion that as the renovations were substantially complete that the policy should be changed from a "builder's risk" policy to a full replacement value policy.
To satisfy Mr. Ardoin's demands, Mr. Joffrion immediately contacted Ronnie Nelson, who earlier that day had solicited the plaintiff's insurance business. That very day, Mr. Joffrion and Mr. Nelson who purported to be an Allstate Insurance agent, met and filled out an application for insurance on the plaintiff's building and business. Mr. Nelson then issued a binder of insurance on the building, naming Allstate as insurer, insuring the building against fire for $750,000.00 and the contents for $400,000.00. Relying upon the binder, the plaintiff cancelled the insurance purchased through Alexandria Insurance Agency and a check was sent by the plaintiff through Louisiana Bank and Trust Company to Nelson Insurance Agency for $16,606.00 to pay the insurance premium.
In the early morning hours of July 20, 1981, the building and its contents were completely destroyed by fire. At this time the premium and application had not yet been forwarded to Allstate by Nelson.
Ultimately the plaintiff sued Allstate, Nelson, and Causey Insurance Agency[1] seeking to recover under the provisions of the insurance binder.
Allstate answered the petition asserting the affirmative defenses of arson, lack of an agency relationship between Nelson and Allstate, and material misrepresentations in the application for insurance.
Louisiana Bank and Trust Company intervened in the lawsuit asserting that it was entitled to recover from Allstate as a loss payee because it was named as a beneficiary in a standard mortgage clause contained in the binder.
Following a lengthy and complex trial, which culminated in eighteen volumes of pleadings and transcript of testimony the district court concluded that although the fire was of a "suspicious" origin there was insufficient evidence to prove that Mr. Joffrion was responsible for the fire. The court further found that Ronnie Nelson was an agent of Allstate at the time the binder was issued and that he was responsible for any material misrepresentations in the application for insurance.
Based upon these conclusions, the district court found in favor of the plaintiff and intervenor and against the defendant, Allstate Insurance Company.
Allstate appeals the decision of the district court and raises ten assignments of error, to-wit:

*968 1. The trial court erred in failing to conclude that the fire was incendiary (the result of arson).
2. The trial court erred as a matter of law in holding "substantial doubt" is the burden of proof which must be overcome for a successful arson defense.
3. The trial court erred in failing to conclude that the fire which destroyed Economy Auto Salvage was set at the direction of Howard Joffrion, Jr.
4. The trial court erred in holding that Ronnie Nelson was the agent of Allstate Insurance Company.
5. The trial court erred in concluding material misrepresentations in the application did not void the policy ab initio.

6. The trial court erred in concluding Allstate owed penalties and attorney's fees to the Bank.
7. The trial court erred in several respects regarding calculations and payment of interest.
8. The trial court erred in its application of La.R.S. 22:691 and 22:695 to the facts of the case.
9. The trial court erred in failing to hold that Ronnie Nelson is liable to Allstate for the breach of his fiduciary duty to that company.
10. The trial court erred in refusing to make any presumption regarding the testimony of certain witnesses from the exercise of their Fifth Amendment privileges.
Economy Auto Salvage answered Allstate's appeal alleging that Allstate arbitrarily and capriciously denied its demands and as such it is entitled to attorney's fees and penalties.
Before we consider the issues on this appeal, we must first deal with a motion to strike filed by Economy Auto Salvage. The motion seeks to prevent Allstate's "attempt to place into the trial record of this appeal a document described as a `minute entry' in an entirely separate proceeding..."
On September 3, 1985, we received a correspondence from Allstate's attorney stating that the enclosed copy of a minute entry should have been attached to their brief.
Counsel for plaintiff responded by filing a motion to strike arguing that the minute entry was not a part of the record upon which the district court's judgment was based and should be excluded.
Allstate counters by stating that a motion to strike is an improper procedural device in a Court of Appeal and therefore should not be considered.
The Uniform Rules  Courts of Appeal contains no specific list of the motions which may be pleaded in a Court of Appeal. However, Rules 2-7.1 and 2-7.2 suggest that there are certain motions which are proper for the Courts of Appeal to consider. We find that the plaintiff's motion, regardless of its title, was the proper procedural device to express its concern as to the propriety of Allstate's offering.
We find that the minute entry is not properly before this Court and cannot be considered. In a civil proceeding involving a forfeiture of a right or property the parties are entitled to an appeal "based upon a complete record of all evidence upon which the judgment is based." Louisiana Constitution of 1974, Article I, Section 19.
A Court of Appeal has no authority to consider evidence which does not constitute a part of the record transmitted on appeal. Merchants and Farmers Bank and Trust Company v. Hammond Motors Company, 161 La. 288, 108 So. 485 (1926); Richmond v. New York Life Insurance Company, 25 So.2d 94 (La.App. 2nd Cir. 1946); and Glazer Wholesale Drug Company v. Tabor, 128 So.2d 226 (La.App. 2nd Cir.1961).
Contrary to Allstate's assertions the minute entry is not included in the category of "[a] book, treatise, or other textural material" which can be submitted to the court *969 as authority as per Uniform Rules  Courts of Appeal 2-15.4.
We therefore rule that the attempt to include the minute entry as support for any argument in the defendant, Allstate's appeal is improper and is hereby excluded from the record.

ASSIGNMENTS OF ERROR NOS. 1, 2, AND 3
By these assignments of error Allstate asserts that the district judge erred in ruling that the cause of the fire was not arson and that the fire was not set at the direction of Howard Joffrion. Allstate further argues that the district judge used an improper legal standard for the burden of proof necessary to prove arson as a defense.
The district judge's written reasons for judgment makes the following comment on Allstate's arson defense:
"On the question of arson the Court can not conclude with the certainty required by law that the fire was of incendiary origin. Although, as said above, there was suspicious circumstances, there is still a substantial doubt in the mind of the Court that Howard Joffrion, Jr., was responsible for the fire."
The classic statement on the law of arson as a defense is contained in the Louisiana Supreme Court case of Sumrall v. Providence Washington Insurance Company, 221 La. 633, 60 So.2d 68 (1952). That case holds:
"Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy." [Citations omitted].
See also more recently Rist v. Commercial Union Insurance Company, 376 So.2d 113 (La.1979).
We will first consider Allstate's assertion that the district court erred as a matter of law in holding "substantial doubt" is the burden of proof which must be overcome for a successful arson defense.
Having read the district judge's written reasons for judgment, especially the above quoted passage concerning the defense of arson, we are unable to interpret those remarks to connote that the district judge required a greater burden of proof than the preponderance of evidence mandated by the jurisprudence.
We feel that the district judge's use of the phrase "substantial doubt" was little more than an unfortunate choice of language. Furthermore, when read in context, the district judge's statement that "there is still a substantial doubt in the mind of the court that Howard Joffrion, Jr., was responsible for the fire" indicates only that the district judge felt that Allstate fell far short of the preponderance of evidence necessary to prove that the fire was set at Joffrion's direction.
We now turn to Allstate's contentions that the district judge erred in failing to find from the evidence that the fire was of incendiary origin and that Howard Joffrion, Jr. was responsible for the fire being set.
In order to successfully prove the defense of arson, the defendant-insurer must prove by a preponderance of the evidence that the fire was the result of arson and that the fire was set either by or at the direction of the plaintiff-insured. Sumrall, supra, and Rist, supra.
The jurisprudence points out that in some cases circumstantial evidence of a plaintiff's financial distress is sufficient proof of a plaintiff's motive for burning the *970 structure. Sumrall, supra; Rist, supra; and Childs v. Zurich American Insurance Company, 476 So.2d 403 (La.App. 2nd Cir. 1985). "And motive, plus the incendiary nature of the fire, would, in the absence of believable rebuttable evidence, be sufficient to sustain the affirmative defense pleaded by the insurer." Sumrall, supra.
However, the determination of the questions of whether the fire was of incendiary origin and whether it was set by the plaintiff are factual questions. Sumrall, supra; Rist, supra; and Childs, supra. Factual determinations of the district court are entitled to great weight, and a Court of Appeal may not overturn those findings unless its review of the record convinces the appellate court that the determinations are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record in this case contains eighteen volumes of pleadings and transcript of testimony and an equal volume of documentary evidence, photographs, and blueprints. A large portion of the testimony and evidence concerns the attempts at proving and rebutting the arson defense. Considering the volume, complexity and length of the evidence, we are constrained from discussing the testimony, conclusions, and hypotheses of each individual witness.
First, we shall consider the issue of whether the evidence was sufficient to prove or disprove that the fire was caused by arson.
The bulk of the evidence concerning the cause of this fire centered around testimony by experts called on behalf of the plaintiff and defendant.
An interesting twist to this case was the testimony of James Lester Barron, who claims to be an arsonist for hire and who confesses to having burned the building.[2] It is not surprising that a great deal of the expert testimony was aimed at supporting or refuting Barron's testimony.
Having studied, examined, and analyzed the evidence in this case we cannot say that the district judge erred in having found that the fire was not of an incendiary nature. Lester Barron, the alleged arsonist, is a convicted felon, an admitted perjurer, and was told by the District Attorney's Office of Rapides Parish that he would not be tried on criminal arson charges in that parish if he testified in this case. His testimony and recorded statements are filled with such contradictions, vacillations, and inconsistencies so as to make his testimony not credible or believable.
In reference to Barron's confession, we were particularly impressed and persuaded by the testimony of Dr. Roger Craddock whose scientific analysis, in our estimation, completely disproved Mr. Barron's assertions. The bottom line of Doctor Craddock's testimony is that had Barron ignited the building in the method in which he had stated, the building would have exploded violently and Barron would have been killed.
Further, we are not convinced that the district judge was clearly wrong after having examined the expert testimony in light of the testimony of the sole eye witness, the contractor in charge of renovations, and the City's electrical inspector.
It is a completely logical hypothesis and not unreasonable to conclude that the fire was indeed caused by the old and faulty wiring of the building and that it was accelerated by paint thinner, varsol and other combustible materials stored in the building *971 by painters and others working on the renovations.
To reiterate, the proof regarding the issue of whether this fire was caused by arson depended upon the testimony of expert witnesses. The trial presented the fact finder with the highly technical, conflicting testimony of these experts. The defendant's experts felt that the fire was caused by arson while the plaintiff's experts felt that the fire was the result of faulty electrical wiring or spontaneous combustion.
Where the testimony of expert witnesses differ, it is largely a matter of fact for the trier of fact to determine the most credible evidence, and a finding of fact in this regard will not be overturned unless manifest error appears in the record. Green v. State, Southwest Louisiana Charity Hospital, 309 So.2d 706 (La.App. 3rd Cir.1975), and Agricultural Equipment Company, Inc. v. Rozas, 488 So.2d 241 (La.App. 3rd Cir.1986).
We are not convinced that the district court committed manifest error in concluding that this fire was not of incendiary origin.
We now turn to the issue of whether the district court erred in failing to find that the fire was set by or at the direction of Howard Joffrion, Jr., one of the owners of Economy Auto Salvage, Inc. Having affirmed the district judge's finding that this fire was not of incendiary origin makes this point moot. However, even had we found that the fire was caused by arson we find that the district judge was not manifestly erroneous in determining that Joffrion was not responsible for the fire.
Allstate tried to prove by inference that Joffrion had the motive to torch the building by presenting evidence of Mr. Joffrion's financial affairs, the amount of the policy in comparison to the purchase price and cost of renovation of the building, and by attempting to place Mr. Joffrion in the company of Orville Stringer shortly before the fire.
After reviewing the record we feel that Mr. Joffrion was not in dire financial circumstances. Mr. Joffrion's debts appeared to be consistent with those of a businessman entrepreneur. The president of Louisiana Bank and Trust, who reviewed and evaluated the plaintiff's loan application found Joffrion's credit to be excellent, with no debts which would arouse suspicion. Furthermore, the CPA hired by Mr. Joffrion to make projections on the potential success of the business, concluded that it would be making a sizeable net profit by the second year.
Allstate asserts that evidence of Mr. Joffrion's intent to commit the arson can be inferred from the amount of the insurance policy as opposed to the value of the building after renovations. The plaintiff purchased the building for $42,000.00. The building was appraised at the time of purchase as being worth $80,000.00. The plaintiff entered into a contract to renovate the building in the amount of $106,000.00. Both the bank and the loan guarantor, Farmers Home Loan Administration, required insurance on the building to be for an amount equal to the replacement value. In response to an inquiry by Ronnie Nelson as to the building's replacement value, the contractor, Faircloth, said that to replace the building it would require a cost of $40 to $45 per square foot and that the building contained approximately 17,000 square feet. Mr. Nelson suggested that the building be insured for $750,000.00.
Allstate introduced two witnesses who claimed that they saw either Mr. Joffrion, or his brother, Earl Joffrion, in the company of Orville Stringer on at least one occasion before the fire. One of those witnesses, Dennis Earl Hailey, is a convicted felon and an admitted perjurer whose testimony contains inconsistencies on these facts.
Based upon all of the evidence, it is not unreasonable to conclude that Howard Joffrion was not responsible for the fire. We find that the district court did not commit manifest error in finding that Joffrion did not set the fire or caused it to be set.

*972 ASSIGNMENT OF ERROR NO. 4
The defendant, Allstate, alleges that the district court erred in finding that Ronnie Nelson was an agent of Allstate at the time the binder was sold.
Ronnie Nelson was the sole stockholder in Nelson Insurance Agency, Inc. He contracted with Allstate Insurance Company and signed Allstate's standard agency contract which provided for binding authority and representative authority to deal with the public. Pursuant to this contract, he was licensed by the State of Louisiana as an Allstate agent and the Oakdale phone directory lists him as an Allstate agent.
On June 12, 1981, Ronnie Nelson sold the stock in Nelson Insurance Agency, Inc. to Vernon Causey.
On July 6, 1981, Ronnie Nelson met with Howard Joffrion, and sold him fire insurance on a building and the contents owned by the plaintiff.
On July 20, 1981, the building and its contents were destroyed by fire. The application for insurance had not yet been forwarded to Allstate from Nelson Insurance Agency, Inc.
On July 24, 1981, Allstate's internal correspondence discussed the immediate termination of the agency contract between Allstate and Nelson Insurance Agency, because of Nelson's indictment on sixteen counts of fraud and/or theft, which were unrelated to this lawsuit.
On July 27, 1981, a letter was sent to Nelson advising him to suspend all new business application activity. Then on August 11, 1981, the Louisiana Department of Insurance was notified to cancel Ronnie Nelson's authority as an agent. On August 11, 1981, the Louisiana Department of Insurance was again contacted and asked to terminate Nelson's authority as an agent retroactively to June 12, 1981, the date Nelson sold the stock in the company to Causey.
Charles Warren Gunn, Allstate's commercial claims unit manager, testified that the purpose for the retroactive cancellation of authority was to establish a defense to this lawsuit.
Allstate argues that Nelson was not an agent of Allstate's and if anything he was an agent of Joffrion or an insurance broker, without the authority to bind Allstate unless and until Allstate accepted the application for insurance. Allstate further argues in the alternative, that if Nelson had binding authority, that the authority was limited to an amount below $750,000.00.
Allstate contends that as it ceased its contractual relationship with Nelson retroactively to June 12, 1981, Nelson was an agent for Economy Auto Salvage.
Generally, the question of whether an insurance broker in any particular transaction is acting as the agent of the insured or the insurer is one of fact, dependent upon the particular circumstances of the case. Thibodeaux v. Lumbermen's Mutual Casualty Company, 448 So.2d 888 (La. App. 3rd Cir.1984), and Foster v. American Deposit Insurance Company, 435 So.2d 571 (La.App. 3rd Cir.1983).
Furthermore, with respect to third persons, an insurance company will be estopped from denying that a certain person is its agent or possesses the authority he assumes to exercise, where it knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he is the company's agent or possesses the authority exercised. Continental Casualty Company v. Monvoison, 195 So. 785 (La.App.Orl.1940); Robicheaux v. Calvert Fire Insurance Company, 171 So.2d 264 (La.App. 1st Cir.1965); and Hinson v. Zurich Insurance Company, 196 So.2d 827 (La.App. 3rd Cir.1967).
Here, Allstate registered Ronnie Nelson and Nelson Insurance Agency, Inc. as authorized agents with the Louisiana Department of Insurance. Ronnie Nelson and Nelson Insurance Agency had entered into a standard contract of agency with Allstate, which on its face disclosed no limitations on Nelson's binding authority.
*973 Nelson introduced himself to Joffrion as an agent for Allstate. Allstate cloaked Nelson with the apparent authority of acting as its agent by providing Nelson with Allstate's application forms, binder forms, and certificate of insurance forms. Allstate helped create the appearance that Nelson was an agent for Allstate by paying for yellow pages advertisements identifying Nelson as an Allstate agent and by providing him with business cards. Furthermore, Nelson solicited Joffrion's business and not vice versa.
We find that because of these factors Allstate helped to create in Mr. Joffrion's mind the appearance that Nelson was an agent for Allstate. Because of this, Allstate is estopped from denying Nelson's status as an agent.

ASSIGNMENT OF ERROR NO. 5
The defendant Allstate alleges that the district judge erred in concluding material misrepresentations in the application of insurance did not void the policy ab initio. In his written reasons for judgment the district judge found as a matter of fact that the applications contained "many material misrepresentations." However, he found that Nelson as an agent for Allstate, having visited the premises should have known that the material statements in the application were false and thus the misstatements could not be used to defeat the plaintiff's claim.
We affirm the district court's ruling on this issue, however, not for those same reasons.
Having carefully examined the testimony of both Joffrion and Nelson in regard to the material misrepresentations, we find that material misrepresentations were, without exception, the creation of Mr. Nelson.
The record indicates to us that Mr. Nelson filled out the application by asking Mr. Joffrion questions about the plaintiff's building and business. However, Mr. Nelson did not ask the specific questions contained in the application, but instead asked questions based upon his interpretation of what information Allstate was actually seeking. Certain of the misrepresentations can only be attributed to Nelson's inaccuracy or inadequacy in transcribing on the application the information furnished to him by Joffrion. We cannot find a single instance where a material misrepresentation was the fault of Howard Joffrion.
Allstate argues that inasmuch as Joffrion signed the application the misrepresentations can be accredited to him. We disagree.
An applicant for insurance "is entitled to rely upon and to sign the application as completed" by the agent "relying upon his expertise in interpreting the nature of the information sought by the company he represented." Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La.1974). Therefore, there are no material misrepresentations made by the applicant Joffrion so as to entitle Allstate to nullify the binder.

ASSIGNMENT OF ERROR NO. 6
Allstate contends that the district court erred in concluding that Allstate owed penalties and attorney's fees to Louisiana Bank and Trust. The crux of the defendant-appellant's argument is that the district judge erroneously concluded that the bank was "the beneficiary of the standard mortgage clause contained in the binder." This finding by the trial court would entitle the bank to recover on the policy even if the defense of arson had been proven, as the bank would be immune to any defenses asserted against the owner-mortgagor. Based upon such a finding, Allstate's refusal to pay to the bank the amount of the loan was arbitrary and capricious and thus entitled the bank to attorney's fees and penalties.
Allstate contends that only a binder was issued and that the binder only listed the bank as a "loss payee". A simple or open loss payee clause would make the bank but a conditional payee whose right to recover were no greater than Economy Auto Salvage's right to recover. And as there was a potential arson defense to Economy's *974 claim, Allstate was not arbitrary or capricious in failing to pay on the bank's claim.
An insurance application on a standard Allstate business application form was filled out by Allstate's agent Nelson. The application contains a "Binder Section" which states that "Allstate hereby binds the insurance applied for to become effective as of the time and date indicated above..." [Emphasis added]. Another page of the application lists Louisiana Bank and Trust, Crowley, La., as "mortgagee or loss payee".
A binder of insurance has been defined in Louisiana as "a document given to the insured which binds the company to pay insurance, should they fire her while the policy is being prepared." Brown v. North River Insurance Company, 144 La. 504, 80 So. 674 (1919). The binder at issue here purports to bind the insurance "applied for". A policy of insurance was entered into evidence by joint stipulation of counsel which was described by Allstate's attorney as the "identical policy that you would issue in the normal course of business...." Furthermore, in the course of testifying Charles Warren Gunn, Allstate's commercial claims unit manager, implies that had a policy been issued in this case it would have been the same policy entered into evidence by the joint stipulation.
The above mentioned policy of insurance contains a mortgage clause that states that if the name of a mortgagee is inserted in the schedule, the mortgagee shall recover if the mortgaged building is damaged and the policy "shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."
The application for insurance describes the bank as a "mortgagee or loss payee". We can only conclude that the binder at issue which bound the insurance "applied for" referred to the policy entered into evidence by joint stipulation of counsel. As that policy contains a standard mortgage clause and as the bank is listed as a mortgagee in the application for insurance we find that the clause would apply to the bank.
A standard mortgage clause creates a separate contract of insurance between the insurer and mortgagee and the "mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner, so that it shall not defeat the insurance so far as the interest of the mortgagee is concerned." May v. Market Insurance Company, 387 So.2d 1081 (La. 1980). Thus, as none of the defenses attributable to Economy could have been asserted against the bank, Allstate should have paid the bank upon demand. As Allstate did not pay the bank within sixty days of demand we find that the district judge did not err in awarding penalties and attorney's fees under La.R.S. 22:658.

ASSIGNMENT OF ERROR NO. 7
The appellant argues that the district court erred in several respects regarding the calculations and payment of interest.
First, the appellant contends that the trial court erred in awarding the plaintiff the contractual interest due and owing on the loan money which plaintiff owed to Louisiana Bank and Trust. Inasmuch as the district court had ruled that the bank was the beneficiary of a standard mortgage clause (see discussion, Assignment of Error No. 6) the court noted in the judgment awarding contractual interest:
"... the Court having found that plaintiff was entitled to have its mortgage cancelled and no further interest accrue, after October 17, 1981, that the plaintiff has suffered damages as the consequence of the failure of ALLSTATE INSURANCE COMPANY and ALLSTATE FIRE INSURANCE COMPANY to make timely payment of the amounts due, such damage including the incurring by plaintiff of additional interest expense to LOUISIANA BANK AND TRUST COMPANY, Crowley, Louisiana, during the pendency of this litigation, at rates that exceed the legal rate of interest, there be judgment herein in favor of plaintiff, ECONOMY AUTO SALVAGE, INC. and against the defendants, ALLSTATE INSURANCE *975 COMPANY and ALLSTATE FIRE INSURANCE COMPANY, awarding plaintiff as additional damages the amounts due LOUISIANA BANK AND TRUST COMPANY by the plaintiff as contractual interest exceeding interest at the legal rate."
Allstate objects to this award saying that neither the binder nor the certificate of insurance provides for this award and that it is inconsistent with the penalty provisions of La.R.S. 22:658. We find that the bank should have been paid the loan value within sixty days of demand (proof of loss). This finding is based upon our decision that the bank as a beneficiary of the standard mortgage clause was immune from any defenses the insurer had against Economy. Payment to the bank would have effectively cancelled the mortgage. Because the bank was not paid, the mortgage was not cancelled and the conventional interest on the loan continued to accrue against Economy.
We feel that to force Economy to pay the conventional interest which accrued on the loan due to Allstate's failure to meet its obligations would be unjust.
We are persuaded that the result reached by the district court in awarding the conventional interest to the plaintiff was proper in view of the rationale of Farace v. Independent Fire Insurance Company, 699 F.2d 204 (Ct. of App. 5th Cir.1983), which states:
"The defendant had no excuse for this delay in payment. The insurance policy provides that the insurer shall pay the amount for which it is liable within sixty days after proof of loss. See also La. Rev.Stat.Ann. Section 22:658 (West 1978). The mortgage clause in the contract provides further that the insurer's liability to the mortgagees named in the policy shall not be invalidated by any act of the mortgagor.
Under the terms of the contract, the insurer's arson defense against the Faraces did not relieve it of liability to the loss payees. It had no reason for failing to make a timely payment to the mortgagees, and therefore any interest and attorneys' fees due on the mortgage were the result of the insurer's own failure to meet its contractual obligations. Under these circumstances, we agree with the trial court that the insurer was not entitled to (credit for) interest and attorneys' fees on the mortgages."
The appellant further alleges that the district court erred in allowing interest on the penalties and attorney's fees awarded to the bank pursuant to La.R.S. 22:658. The appellant asserts that as penalties and attorney's fees are awards which cannot be ascertained until such time as they are awarded, they are not subject to the application of interest.
We find that legal interest on penalties and attorney's fees can be awarded by a district court. Brummerloh v. Firemen's Insurance Company of Newark, 377 So.2d 1301 (La.App. 3rd Cir.1979), and Haynes v. Standard Fire Insurance Company, 370 So.2d 118 (La.App. 1st Cir.1979).
However, since the amount of penalties and attorney's fees due under La.R.S. 22:658 are not ascertainable until awarded by the court, interest will run only from the date of the judgment. Brummerloh, supra.
We will therefore amend the judgment to reflect that legal interest on the award of penalties and attorney's fees awarded to Louisiana Bank and Trust of Crowley pursuant to La.R.S. 22:658 shall begin accruing on May 15, 1985, the date of the amended judgment.
In addition, the appellant contends that on the principal demands the district court erred in awarding legal interest to Economy from the date of judicial demand and to the bank from October 17, 1981, sixty days from demand (proof of loss).
In Louisiana, where a policy of insurance stipulates for payment of losses sixty days after proof of loss, and the insurer makes reasonable efforts to effect an adjustment, they will not be liable for interest from the expiration of the sixty days from the judicial demand. Gettwerth *976 v. Teutonia Insurance Company, 29 La. Ann. 30 (1877). See also Degelos Brothers Grain Corporation v. Fireman's Fund Insurance Company of Texas, 498 F.2d 1238 (Ct. of App. 5th Cir.La.1974).
For that reason we find that as to Economy Auto Salvage interest began to run upon the date of judicial demand. However, in regard to the bank's demand, Allstate did not make reasonable efforts in making an adjudgment on the bank's demand, in light of the bank's status as a mortgagee. Therefore, the interest on the bank's principal demand should begin to run from sixty days after the bank made its demand. We therefore affirm the district court on this point.

ASSIGNMENT OF ERROR NO. 8
The defendant-appellant next contends that the district court erred in the application of La.R.S. 22:691 and 22:695 to the facts of this case. First the defendant asserts that the insurance binder named Joffrion as the insured, rather than Economy Auto Salvage, and as Joffrion had no insurable interest in the building the binder was not effective. Allstate does point out that in his written reasons for judgment the district judge noted that: "Plaintiff is the insured, and the binder should be reformed to reflect the correct name of the insured." Allstate further alleges that the district court had no authority to direct the amendment of the binder and thus the binder is still ineffective, as Joffrion has no insurable interest and is named as the insured.
During the course of his testimony, Ronnie Nelson testified that Mr. Joffrion informed him that the insured was Economy Auto Salvage, Inc. and that the failure to name that party as the insured on the binder was his error.
As Nelson was Allstate's agent, his inadequacy in transcribing on the application and binder the information furnished to him by Joffrion shall be charged to Allstate. Tiner v. Aetna, supra.
Allstate then argues that the district court erred in its application of the valued policy law by awarding Economy Auto Salvage the full coverage under the policy. Allstate alleges that the value of the property was so minute in proportion to the amount of the policy that this proves an intent on the part of Economy Auto Salvage to overvalue the property and deceive and defraud the insurance company. Allstate states that Economy did not bring forth any experts to testify as to the actual cash value of the building.
We find a flaw in Allstate's logic in that the binder purchased by Economy Auto Salvage was to cover the replacement value of the building. The uncontradicted testimony of the plaintiff's witnesses was that the replacement value of the building was in excess of $750,000.00. Furthermore, the $750,000.00 replacement value figure was placed on the application of insurance by Nelson, Allstate's agent. From the record we cannot detect, nor has there been any allegations of collusion between Nelson and plaintiff.
We find that the value policy law was not abridged by the district court.

ASSIGNMENT OF ERROR NO. 9
Allstate urges this Court to reverse the district court's dismissal of its reconventional demand against Ronnie Nelson and Nelson Insurance Agency, Inc. The appellant-defendant argues that the district court erred in failing to hold that Ronnie Nelson is liable to Allstate for any sums Allstate owes to Economy because of a breach of his fiduciary duty to that company.
Although there is evidence in the record that Ronnie Nelson admits that any misrepresentations in Economy Auto Salvage's application were his fault, and although there are some assertions in the record by Allstate that Nelson knew that he had no binding authority (nevertheless there appears to be nothing in the record one way or the other) but acted so as to bind Allstate through his apparent authority. We must conclude that the main thrust of this *977 case was directed towards whether or not this fire was incendiary and if so was Joffrion involved in the arson, and also whether Nelson was indeed an agent of Allstate for the purpose of Economy's and the bank's coverage.
The question of Allstate's reconventional demand fairly well got lost in the schuffle because of the intracacies of this case, i.e., there was not a great deal of evidence on the subject.
Ordinarily, we refrain from remanding cases or portions of cases for reconsideration, but because of our doubts as to the adequacy of the evidence we feel that the interest of justice dictates that this case be remanded to the district court for the sole purpose of allowing a full consideration of Allstate's reconventional demand against Nelson and Nelson Insurance Agency, Inc.

ASSIGNMENT OF ERROR NO. 10
The final assignment of error deals with Allstate's assertion that the trial court erred in refusing to make any presumption against Economy in regard to testimony of certain witnesses who exercised their fifth amendment privileges.
At the trial of the matter, Allstate called, Thomas Earl Fairbanks, who Barron alleged was his accomplice, and Judith Stringer, Orville Stringer's wife. Each of these witnesses responded to questions by asserting their fifth amendment privilege against self-incrimination. The defendant Allstate alleges that as Barron repeatedly referred to those two witnesses as part of the arson for hire scheme that the court should have inferred support for Barron's testimony from their silence.
In Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the U.S. Supreme Court commented on the issue of silence by a witness in a civil proceeding:
"... the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment `does not preclude the inference where the privilege is claimed by a party to a civil cause.' 8 J. Wigmore, Evidence 439."
We interpret that finding to mean that in a civil case, a negative inference may be drawn against a party to the action who asserts his Fifth Amendment privileges. We do not find that a negative inference should be reached by a court against either party when a disinterested, nonparty witness refuses to testify on Fifth Amendment grounds.
It is illogical to conclude that a negative inference against Economy should be drawn because a nonparty witness called by Allstate pleads the Fifth Amendment privilege.
We therefore find that this assignment of error lacks merit.
We now consider Economy Auto Salvage, Inc.'s answer to the appeal. Economy contends that it is entitled to penalties and attorney's fees under La.R.S. 22:658.
La.R.S. 22:658 provides that a claim for insurance proceeds, other than under a life or a health and accident policy must be paid within sixty days of proof of loss. The statute provides that failure to make such payment, if such failure is arbitrary, capricious or without probable cause, subject the insurer to penalties and attorney's fees.
We find that the district court was correct in ruling that Economy was not entitled to recover penalties and attorney's fees.
Based upon the preliminary findings of Capt. Delcomyn of the Alexandria Fire Department that the fire was caused by arson, the alleged confession of Barron, and the contrasting and divergent opinions of the experts as to the cause and origin of the blaze, we find that Allstate did not act arbitrarily or capriciously in refusing to pay on the plaintiff's claim.
For the above and foregoing reasons that portion of the district court judgment allowing interest on the penalties and attorney's fees in favor of Louisiana Bank of *978 Crowley to accrue from the date of proof of loss is hereby reversed. We Order the judgment to be amended to reflect that legal interest on the award of penalties and attorney's fees awarded to Louisiana Bank and Trust of Crowley shall begin accruing on May 15, 1985, the date of the amended judgment.
We further order that this case be remanded in part to the district court for the sole purpose of allowing a full determination of Allstate's reconventional demand seeking recovery from Ronnie Nelson and Nelson Insurance Agency, Inc. for their alleged breach of fiduciary duty.
In all other respects the opinion of the district court is affirmed.
AFFIRMED IN PART, REVERSED IN PART, REMANDED IN PART, AND RENDERED.
NOTES
[1] Shortly before the facts which gave rise to this lawsuit occurred, Ronnie Nelson sold the stock in Nelson Insurance Agency, Inc., to the owners of Causey Insurance Agency, Inc.
[2] James Lester Barron testified that he was hired by the late Orville Stringer to burn the building. According to testimony, Orville Stringer operated an arson for hire and accident fraud ring. It is interesting to note that Stringer also operated a scrap and salvage operation and that he also refurbished and sold used autos. Barron stated that Stringer enticed him into allegedly burning the building by stating that Baron would be burning a black man out of business. Barron stated that Stringer knew he had been "raised" against Blacks. Barron stated that he placed between 10 and 14 one gallon plastic jugs filled with gasoline in the building, poured a "trailer" of gasoline to connect the jugs and then poured a fuse consisting of a mixture of one-half gallon gasoline and one-half gallon diesel fuel and ignited the fuse with a cigarette lighter.